BETTY L. GRANT, EXECUTRIX OF THE ESTATE OF TOMMY J. GRANT, PLAINTIFF-APPELLANT v. HIGH POINT REGIONAL HEALTH SYSTEM, DEFENDANT-APPELLEE

No. COA06-1079

(Filed 19 June 2007)

**1. Obstruction of Justice— common law—destroying medical records**

The trial court erred by dismissing plaintiff's claim for common law obstruction of justice where plaintiff alleged that defendant hospital destroyed medical records, thus keeping plaintiff from obtaining the required Rule 9(j) certification and preventing a medical malpractice claim.

**2. Evidence— spoliation—dismissed**

The trial court correctly dismissed plaintiff's claim for common law spoliation where the allegations were that defendant hospital destroyed medical records and prevented a medical malpractice claim. The precedent relied upon by defendant arose in the context of wills and has been cited only for the inference to be drawn from the destruction of evidence.

Appeal by Plaintiff from order entered 10 February 2006 by Judge John O. Craig, III in Superior Court, Guilford County. Heard in the Court of Appeals 15 March 2007.

*Kennedy, Kennedy, Kennedy & Kennedy, L.L.P., by Harvey L. Kennedy and Harold L. Kennedy, III, for Plaintiff-Appellant.*

*Sharpless & Stavola, P.A., by Joseph P. Booth, III, for Defendant-Appellee.*

McGEE, Judge.

Betty L. Grant (Plaintiff), Executrix of the Estate of Tommy J. Grant (decedent), filed an amended complaint against High Point Regional Health System (Defendant) on 4 June 2004. Plaintiff alleged in the complaint that Defendant owned and operated High Point Regional Hospital (the hospital). Plaintiff further alleged the following: Decedent went to the hospital's emergency room on or around 13 September 2000 complaining of excruciating knee pain. X-rays were taken of decedent's knee. However, "by the time that [decedent's] knee cancer was finally. diagnosed by any physician(s), [decedent's] cancer was substantially advanced and his situation was terminal." Decedent died on 17 February 2003.

Patti L. Holt, one of Plaintiff's attorneys, sent a letter to the hospital on 31 August 2003 stating that she represented decedent's estate with respect to a potential medical negligence claim. The letter also requested "emergency room and radiology records and films generated during the period of June 1, 2000 to December 31, 2000." Defendant did not respond to this request. Plaintiff's attorney then spoke by telephone with a hospital employee named "Rose" on 15 September 2003. Rose told Plaintiff's attorney that decedent's x-rays from 13 September 2000 "were present" at the hospital. Rose requested that Plaintiff's attorney send another medical release form because the first release had not been forwarded to Rose. Plaintiff's attorney sent another release. Plaintiff's attorney did not receive decedent's x-rays or records by 23 September 2003, and she called Rose to inquire about the records. Rose told Plaintiff's attorney that she could not find decedent's x-rays.

In the following months, Plaintiff's attorney tried, unsuccessfully, to obtain decedent's x-rays and records from Defendant. On 14 January 2004, Plaintiff's attorney sent Defendant a subpoena to produce decedent's x-rays and records. Defendant responded on 20 January 2004 that the x-rays were "not in [decedent's] folder" and "had not been checked out."

Plaintiff further alleged that

the failure of the hospital to maintain the x-ray film taken on September 13, 2000 has effectively precluded . . . Plaintiff from being able to successfully prosecute a medical malpractice action against . . . Defendant hospital and others. Furthermore, at this time the missing x-rays have prevented Plaintiff's coun-

sel from securing the Rule 9(j) certification. That . . . Defendant Hospital was required to keep, maintain and preserve all medical records, including x-rays, for 11 (eleven) years pursuant to N.C.A.C. 10A: N.C.A.C. 13B.3903, and the rules and regulations of the Joint Commission on Accreditation of Healthcare Organizations (JCAHO).

Plaintiff also alleged that Defendant "intentionally and/or recklessly destroyed the x-ray film of . . . [d]ecedent . . . after [Defendant] was placed on notice of a potential medical malpractice claim against . . . Defendant hospital on August 31, 2003." In the alternative, Plaintiff alleged that Defendant was negligent and careless in failing to maintain and preserve the x-rays. Plaintiff alleged Defendant's conduct amounted to spoliation and common law obstruction of justice. Plaintiff also alleged that as a direct and proximate result of Defendant's spoliation and common law obstruction of justice, "Plaintiff has suffered actual damages, including but not limited to all damages she could have recovered from wrongful death and medical negligence—i.e.: medical expenses, funeral expenses, pain and suffering, loss of services, protection, care and assistance, society, companionship, comfort and guidance, kindly offices and advice." Plaintiff sought compensatory and punitive damages.

Defendant filed an answer on 24 June 2004 and a motion to dismiss Plaintiff's complaint on 11 January 2006. The trial court entered an order dismissing Plaintiff's complaint on 10 February 2006. Plaintiff appeals.

The standard of review of an order granting a motion to dismiss pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) is "whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory, whether properly labeled or not." *Harris v. NCNB*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987). "In ruling upon such a motion, the complaint is to be liberally construed, and the court should not dismiss the complaint 'unless it appears beyond doubt that [the] plaintiff could prove no set of facts in support of his claim which would entitle him to relief.' " *Holloman v. Harrelson*, 149 N.C. App. 861, 864, 561 S.E.2d 351, 353 (quoting *Dixon v. Stuart*, 85 N.C. App. 338, 340, 354 S.E.2d 757, 758 (1987)), *disc. review denied*, 355 N.C. 748, 565 S.E.2d 665 (2002).

I.

**[1]** Plaintiff argues the trial court erred by dismissing her claim for common law obstruction of justice. In *In re Kivett*, 309 N.C. 635, 309 S.E.2d 442 (1983), our Supreme Court recognized that obstruction of justice is a common law offense in North Carolina. *Id.* at 670, 309 S.E.2d at 462. " 'At common law it is an offense to do any act which prevents, obstructs, impedes or hinders public or legal justice. The common law offense of obstructing public justice may take a variety of forms[.]' " *Id.* (quoting 67 C.J.S. *Obstructing Justice* §§ 1, 2 (1978)). The Supreme Court also recognized that Article 30 of Chapter 14 of the General Statutes, which sets forth specific crimes under the heading of *Obstructing Justice*, does not abrogate the common law offense of obstruction of justice. *Id.* Furthermore, "[t]here is no indication that the legislature intended Article 30 to encompass all aspects of obstruction of justice." *Id.*

Plaintiff argues, and we agree, that *Henry v. Deen*, 310 N.C. 75, 310 S.E.2d 326 (1984), is analogous to the present case. In *Henry*, the plaintiff was an administrator of a decedent's estate who sued two physicians and a physician's assistant for the wrongful death of the decedent and for civil conspiracy. *Id.* at 77, 310 S.E.2d at 328. The plaintiff alleged the following. The decedent experienced severe chest pain and other ailments and went to the emergency room around 30 June or 1 July 1979. *Id.* at 77, 310 S.E.2d at 329. The emergency room physician diagnosed the decedent with pneumonia and prescribed medicine for the decedent. *Id.* However, after reviewing an x-ray report that indicated possible serious cardiac deterioration, the emergency room physician instructed the decedent to see the defendant physician Deen. *Id.* at 78, 310 S.E.2d at 329. The decedent visited Deen's office on 3 July 1979. Deen and his physician's assistant, Hall, urged the decedent to continue taking medicine for pneumonia. *Id.*

The decedent returned for a follow-up visit on 6 July 1979 and Hall, without consulting Deen, told the decedent to continue taking the medicine for pneumonia. *Id.* The plaintiff alleged that the decedent "suffered from arteriosclerosis, coronary atheromatosis and coronary thrombosis, the combination of which, if undiagnosed and untreated, leads inevitably to the death of heart tissue and possible cardiac arrest." *Id.* at 78-79, 310 S.E.2d at 329. The plaintiff also alleged that the decedent's symptoms made a medical diagnosis of heart disease "compelling and obvious." *Id.* at 79, 310 S.E.2d at 329.

**GRANT v. HIGH POINT REG'L HEALTH SYS.**

[184 N.C. App. 250 (2007)]

The decedent died on 8 July 1979 of a massive myocardial infarction as a result of heart disease. *Id.*

With respect to the claim for civil conspiracy, the plaintiff in *Henry* specifically alleged that Deen and Hall agreed to create, and did create, false and misleading entries in the decedent's medical chart and that "the defendants obliterated another entry in the chart concerning the true facts of the diagnosis and treatment of [the decedent]." *Id.* at 87, 310 S.E.2d at 334. The plaintiff further alleged that Deen and Hall conspired with the defendant physician Niazi to conceal the decedent's actual medical record and to create a false medical record. *Id.* The plaintiff further alleged that Niazi agreed to produce the false document to anyone who inquired about Niazi's participation in the decedent's treatment. *Id.* The plaintiff sought actual damages for wrongful death, and punitive damages for wrongful death and civil conspiracy, from Deen and Hall. *Id.* at 79, 310 S.E.2d at 330. The plaintiff also sought punitive damages for civil conspiracy from Niazi. *Id.*

The defendants in *Henry* moved to dismiss the plaintiff's original complaint, and the plaintiff filed a motion to amend the complaint, along with a proposed amended complaint. *Id.* In the proposed amended complaint, the plaintiff alleged that Hall consulted with Niazi at the decedent's follow-up visit on 6 July 1979 and that, *inter alia,* Niazi attempted to diagnose and advise treatment for the decedent over the telephone. *Id.* at 79-80, 310 S.E.2d at 330. In the proposed amended complaint, the plaintiff also added a claim against Niazi for actual and punitive damages for wrongful death, and a claim against Deen, Hall and Niazi for actual damages as a result of the civil conspiracies. *Id.* at 80, 310 S.E.2d at 330.

The trial court dismissed the plaintiff's claims for civil conspiracy and for punitive damages for wrongful death against Deen, Hall, and Niazi. *Id.* The trial court also dismissed the wrongful death claim against Niazi and denied the plaintiff's motion to amend. *Id.* On appeal, our Court upheld the dismissal of the punitive damages claims against Hall and Deen and also upheld the dismissal of the civil conspiracy claims against the defendants. *Id.* However, our Court reversed the trial court's denial of some of the plaintiff's proposed amendments. *Id.*

Our Supreme Court reversed the decision of our Court and held that the plaintiff's allegations of civil conspiracy, "if found to have occurred, would be acts which obstruct, impede or hinder public or

legal justice and would amount to the common law offense of obstructing public justice." *Id.* at 87, 310 S.E.2d at 334. Therefore, our Supreme Court held that the plaintiff's complaint stated a claim for civil conspiracy and that the plaintiff's amended complaint, if allowed by the trial court on remand, added the required allegation of injury. *Id.*

In the present case, Defendant contends that *Henry* is inapplicable because the cause of action at issue in *Henry* was a civil conspiracy, not obstruction of justice. However, our Supreme Court pointed out in *Henry* that

[i]n civil actions for recovery for injury caused by acts committed pursuant to a conspiracy, this Court has stated that the combination or conspiracy charged does no more than associate the defendants together and perhaps liberalize the rules of evidence to the extent that under the proper circumstances the acts of one may be admissible against all. The gravamen of the action is the resultant injury, and not the conspiracy itself.

*Id.* at 86-87, 310 S.E.2d at 334 (internal citations omitted). Our Supreme Court further stated that to prove a civil conspiracy, there must be a wrongful act resulting in injury that is committed pursuant to a conspiracy. *Id.* at 87, 310 S.E.2d at 334. Therefore, in *Henry*, the wrongful acts necessary to prove conspiracy were the acts constituting obstruction of justice. *Id.* Accordingly, as the acts constituting obstruction of justice underlying the civil conspiracy in *Henry* were similar to Defendant's alleged actions in the present case, *Henry* is persuasive.

Plaintiff in the present case alleged, as did the plaintiff in *Henry*, that Defendant destroyed the medical records of decedent. Plaintiff alleged Defendant's actions effectively precluded Plaintiff from obtaining the required Rule 9(j) certification. Plaintiff further alleged that Defendant's actions "obstructed, impeded and hindered public or legal justice[] in that the failure of . . . Defendant . . . to preserve, keep and maintain the x-ray film described above has effectively precluded . . . Plaintiff from being able to successfully prosecute a medical malpractice action against . . . Defendant . . . and others." Plaintiff alleged, therefore, that Defendant's conduct constituted common law obstruction of justice. We hold that such acts by Defendant, if true, "would be acts which obstruct, impede or hinder public or legal justice and would amount to the common law offense of obstructing public justice." *See Henry*, 310 N.C. at 87, 310

S.E.2d at 334. Plaintiff's complaint stated a cause of action for common law obstruction of justice.

Defendant contends that Plaintiff's allegations of proximate causation and damages are too speculative. However, at the Rule 12(b)(6) stage, we look only to whether the allegations in a complaint, taken as true, state a legally cognizable claim. *Harris*, 85 N.C. App. at 670, 355 S.E.2d at 840. In *Henry*, the plaintiff's original complaint did not seek actual damages resulting from the civil conspiracy. *Henry*, 310 N.C. at 79, 310 S.E.2d at 330. However, our Supreme Court held that if the trial court, on remand, allowed the plaintiff's amended complaint, which did allege actual damages arising from the civil conspiracy, Plaintiff's claim was legally sufficient to withstand a motion to dismiss. *Id.* at 90, 310 S.E.2d at 336.

In the present case, Plaintiff sufficiently alleged actual damages in her complaint as follows: "Plaintiff has suffered actual damages, including but not limited to all damages [Plaintiff] could have recovered from wrongful death and medical negligence—i.e.: medical expenses, funeral expenses, pain and suffering, loss of services, protection, care and assistance, society, companionship, comfort and guidance, kindly offices and advice." It is immaterial that the specific actual damages sought by Plaintiff in the present case are different from the specific actual damages sought by the plaintiff in *Henry*.

Defendant further contends that Plaintiff failed to allege that Defendant's actions directly impacted a judicial proceeding brought by Plaintiff. A similar argument was rejected in *Jackson v. Blue Dolphin Communications of N.C.*, 226 F. Supp. 2d 785 (W.D.N.C. 2002), which we find persuasive. In *Jackson*, the plaintiff alleged that the defendants attempted to force her to sign a false affidavit which would have been used in a civil suit later filed by one of the plaintiff's colleagues. *Id.* at 794. When the plaintiff refused to sign the affidavit, the defendants terminated her employment. *Id.* The Court held that the "[p]laintiff's allegations [were] sufficient to show that [the] [d]efendants attempted to impede the legal justice system through the false affidavit." *Id.* The defendants argued that the plaintiff did not have standing "because a suit involving her was not pending at the time of the alleged obstruction of justice." *Id.* However, the Court held there was no requirement that a suit be pending for the plaintiff to have a valid claim for obstruction of justice. *Id.* at 794-95. In so holding, the Court relied on *Burgess v. Busby*, 142 N.C. App. 393, 544 S.E.2d 4, *disc. review improvidently allowed*, 354 N.C. 351, 553

S.E.2d 679, *reh'g denied*, 355 N.C. 224, 559 S.E.2d 554 (2001), where the defendant had retaliated against jurors who had previously found a colleague of the defendant liable for medical malpractice. *Id.* at 794 (citing *Burgess*, 142 N.C. App. at 396-98, 544 S.E.2d at 6-7). However, although the actions of the defendant in *Burgess* occurred after the completion of the first trial, but before the filing of the obstruction of justice claim, the plaintiffs had standing to bring the obstruction of justice claim. *Id.* (citing *Burgess*, 142 N.C. App. at 396-98, 544 S.E.2d at 6-7).

In the present case, Plaintiff alleged that Defendant's actions prevented her from obtaining the required Rule 9(j) certification and from successfully prosecuting a medical negligence action against Defendant and others. Therefore, Defendant's alleged actions directly prevented, obstructed, or impeded public or legal justice by precluding the filing of a civil action.

Defendant also raises concerns that by recognizing a cause of action for common law obstruction of justice in the present case, our Court would be recognizing that a cause of action could be brought against any third party that fails to produce documents or other matter requested by a potential litigant. We are not so concerned. Plaintiff alleged that Defendant's actions "precluded . . . Plaintiff from being able to successfully prosecute a medical malpractice action against . . . Defendant . . . and others." As we have just held, Plaintiff sufficiently alleged that Defendant's conduct prevented, obstructed, or impeded public or legal justice. For all the reasons stated above, we hold the trial court erred by dismissing Plaintiff's claim for common law obstruction of justice. Therefore, we reverse the dismissal of this claim.

II.

[2] Plaintiff also argues the trial court erred by dismissing her claim for common law spoliation. In support of her argument, Plaintiff relies upon *Dulin v. Bailey*, 172 N.C. 608, 90 S.E. 689 (1916). Plaintiff argues that in *Dulin*, our Supreme Court recognized a cause of action for spoliation that is applicable in the present case. We disagree.

In *Dulin*, the plaintiff brought a tort action against the defendants, alleging they conspired and injured the plaintiff by removing from a will a legacy to the plaintiff and others. *Id.* at 608, 90 S.E. at 689. Our Supreme Court stated: "Though this action seems to be of the first impression in this [S]tate, and is doubtless a very unusual

one, there is foundation and reason for the action upon well-settled principles of law, and we are not entirely without precedent." *Id.* at 609, 90 S.E. at 689. The precedents upon which our Supreme Court relied were limited to the context of wills. *Id.* at 609, 90 S.E. at 689-90. However, our Supreme Court held that "[e]ven if there had been no precedent, it would seem that upon the principle of justice that there is 'no wrong without a remedy[,]' the plaintiff is entitled to maintain this action if, as she alleges, the defendants conspired and destroyed the subsequent will in which the legacy was left her." *Id.* at 609, 90 S.E. at 690.

For the reasons that follow, we hold that *Dulin* does not control the present case. First, in the ninety years since it was announced, *Dulin* has never been cited in this State for its holding relating to a tort for spoliation, either in the context of wills or in any other context. Since *Dulin*, the only case law related to spoliation has dealt with the inference arising in ongoing litigation from the intentional destruction of evidence. *See, e.g., Red Hill Hosiery Mill, Inc. v. MagneTek, Inc.*, 138 N.C. App. 70, 78, 530 S.E.2d 321, 328, *disc. review denied*, 353 N.C. 268, 546 S.E.2d 112 (citation omitted) (2000) (stating that "a party's intentional destruction of evidence in its control before it is made available to the adverse party can give rise to an inference that the evidence destroyed would injure its (the party who destroyed the evidence) case. This principle is known as 'spoliation of evidence.' "). Second, the precedent upon which our Supreme Court relied in making its decision in *Dulin* was limited to the context of wills. This demonstrates the limited nature of the Supreme Court's holding. Third, it is clear that any wrong alleged by Plaintiff in the present case is not without a remedy because we have already held that Plaintiff stated a cause of action for common law obstruction of justice. Therefore, we affirm the trial court's dismissal of Plaintiff's claim for common law spoliation.

Reversed and remanded in part; affirmed in part.

Judges ELMORE and STEPHENS concur.