STATE OF NORTH CAROLINA v. THOMAS EDWARD WRIGHT, Defendant

No. COA09-674

(Filed 3 August 2010)

**1. Obstruction of Justice— common law—campaign finance reports**

The trial court properly denied defendant's motion to dismiss a charge of obstruction of justice arising from his failure to file complete and accurate campaign finance reports.

**2. Obstruction of Justice— campaign finance reports—no ex post facto violation**

Obstruction of justice charges against defendant for not filing accurate campaign finance reports were constitutional. *Ex post facto* analysis does not apply because defendant was not arguing that a legislative act was being applied retroactively.

**3. Obstruction of Justice— instructions—campaign finance reports**

The trial court did not err in its instructions on obstruction of justice in a prosecution where the instructions focused on obstructing the State Board of Election's access.

Appeal by defendant from judgment entered 27 August 2008 by Judge Donald W. Stephens in Wake County Superior Court. Heard in the Court of Appeals 16 November 2009.

*Attorney General Roy Cooper, by Special Deputy Attorney General Alexander McC. Peters, for the State.*

*Douglas S. Harris for defendant-appellant.*

GEER, Judge.

Defendant Thomas Edward Wright appeals his conviction of felony obstruction of justice, contending his failure to file complete and true campaign finance disclosure reports with the North Carolina State Board of Elections ("SBOE") cannot constitute common law obstruction of justice. We recognize that our courts have not previously encountered an attempt to apply this criminal common law offense in circumstances similar to those in this case. Nevertheless, after reviewing North Carolina's precedent and considering the ratio-

nale underlying the common law offense, we hold defendant's conduct fits within the definition of common law obstruction of justice adopted by our courts.

## Facts

The evidence at trial tended to show the following facts. Defendant, a member of the North Carolina House of Representatives, was a candidate for re-election in 2000, 2002, 2004, and 2006. He was required to file with the SBOE campaign finance disclosure reports disclosing all campaign contributions and expenditures. Quarterly reports were required to be filed during even-numbered or general election years, and semi-annual reports were required to be filed during odd-numbered years.

Between January 2000 and December 2006, defendant filed approximately 22 campaign finance disclosure reports. Defendant personally certified each report as "complete, true and correct," and four of these reports were signed under oath and notarized. Defendant was also required to give the SBOE his campaign treasurer's contact information and all account numbers for campaign bank accounts.

In December 2006, the SBOE received a sworn complaint from a registered voter alleging that defendant had failed to timely disclose some of the contributions made to his campaign. As a result, the SBOE initiated an investigation of defendant's campaign finance disclosure reports. Defendant had identified "Velma McCoy" as his treasurer, but had failed to provide the SBOE with her contact information, and the SBOE was unable to locate her. The SBOE also learned that the bank account defendant had on record as his campaign account had been closed several years earlier, but that his campaign had five other bank accounts, one of which was a joint account he shared with his wife and another of which was his own personal account.

Ultimately, the SBOE determined that defendant had failed to disclose $150,350.00 in contributions and $76,892.00 in transfers from campaign accounts to defendant. After the irregularities were brought to his attention, defendant failed to amend the reports.

On 10 December 2007, defendant was indicted for felony obstruction of justice. On 27 August 2008, the jury convicted defendant of that charge, and the trial court sentenced defendant to six to eight months imprisonment. Defendant timely appealed to this Court.

I

**[1]** Defendant's primary contention on appeal is that the trial court erred in denying his motion to dismiss because the State failed to present sufficient evidence that he engaged in common law obstruction of justice. According to defendant, because he filed all of the campaign finance disclosure reports before any criminal investigation or legal proceedings had begun, there could be no obstruction of justice.

"This Court reviews the trial court's denial of a motion to dismiss *de novo*." *State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007). "When ruling on a defendant's motion to dismiss, the trial court must determine whether there is substantial evidence (1) of each essential element of the offense charged, and (2) that the defendant is the perpetrator of the offense." *Id.* " 'Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Id.* (quoting *State v. Cummings*, 46 N.C. App. 680, 683, 265 S.E.2d 923, 925, *aff'd*, 301 N.C. 374, 271 S.E.2d 277 (1980)). We view the evidence in the light most favorable to the State. *State v. Powell*, 299 N.C. 95, 99, 261 S.E.2d 114, 117 (1980).

In *In re Kivett*, 309 N.C. 635, 670, 309 S.E.2d 442, 462 (1983), our Supreme Court confirmed that "[o]bstruction of justice is a common law offense in North Carolina" that was not abrogated by Article 30 of Chapter 14 of the General Statutes, which sets out statutory "obstruction of justice" offenses. The Court then adopted the following definition of the common law offense: " 'At common law it is an offense to do any act which prevents, obstructs, impedes or hinders public or legal justice. The common law offense of obstructing public justice may take a variety of forms . . . .' " *Id.* (quoting 67 C.J.S. *Obstructing Justice* §§ 1, 2 (1978)).

Although *Kivett* involved a superior court judge's attempt to prevent the convening of a grand jury to indict him, the Supreme Court, a year later, concluded that common law obstruction of justice extends beyond interference with criminal proceedings. In *Henry v. Deen*, 310 N.C. 75, 87, 310 S.E.2d 326, 334 (1984), the plaintiff alleged that the defendants had created false and misleading entries in a medical chart of a deceased patient and had obliterated another entry in the chart that described the true facts of the diagnosis and treatment of the deceased. The complaint further alleged that one defendant created a false medical record that a second defendant agreed to produce to anyone who inquired about the second defendant's involvement in the deceased's treatment. *Id.* At the time of

the alleged acts, no legal proceedings were pending or actually threatened, although the plaintiff had attempted to begin to investigate the deceased's death.

Despite the lack of pending proceedings, the Supreme Court held that "[s]uch acts by the defendants, if found to have occurred, would be acts which obstruct, impede or hinder public or legal justice and would amount to the common law offense of obstructing public justice." *Id.* The Court explained that "this State has a policy against parties deliberately frustrating and causing undue expense to adverse parties gathering information about their claims" and that "[w]here, as alleged here, a party deliberately destroys, alters or creates a false document to subvert an adverse party's investigation of his right to seek a legal remedy," a claim for obstruction of justice arises. *Id.* at 87-88, 310 S.E.2d at 334-35.

This Court applied *Henry* in *Grant v. High Point Reg'l Health Sys.*, 184 N.C. App. 250, 254-55, 645 S.E.2d 851, 854-55 (2007), *disc. review improvidently allowed per curiam*, 362 N.C. 502, 666 S.E.2d 757 (2008). The Court described the plaintiff's allegations as being

> that Defendant destroyed the medical records of decedent. Plaintiff alleged Defendant's actions effectively precluded Plaintiff from obtaining the required Rule 9(j) certification. Plaintiff further alleged that Defendant's actions "obstructed, impeded and hindered public or legal justice[ ] in that the failure of . . . Defendant . . . to preserve, keep and maintain the x-ray film described above has effectively precluded . . . Plaintiff from being able to successfully prosecute a medical malpractice action against . . . Defendant . . . and others."

*Id.* at 255, 645 S.E.2d at 855. The Court held that such acts, if true, would amount to the common law offense of obstructing public justice. *Id.* The Court specifically rejected defendant's contention that *Henry* did not apply because the plaintiff had "failed to allege that [d]efendant's actions directly impacted a judicial proceeding brought by [p]laintiff." *Grant*, 184 N.C. App. at 256, 645 S.E.2d at 855.

In this case, the State argues that defendant is guilty of common law obstruction of justice "because he knowingly filed with the [SBOE] false campaign finance reports with the intent of misleading the [SBOE] and the voting public about the sources and uses of his campaign contributions." During the relevant time frame, defendant was a member of the House of Representatives and was four times a

candidate for re-election. He was required to file regular campaign finance disclosure reports with the SBOE to provide both the SBOE and the public with accurate information about his compliance with campaign finance laws, the sources of his contributions, and the nature of his expenditures. His reports were made under oath or under penalty of perjury.

We believe these facts fall within the scope of the common law offense of obstruction of justice as set out in *Kivett, Henry,* and *Grant.* As occurred in *Henry,* defendant's sworn false reports deliberately hindered the ability of the SBOE and the public to investigate and uncover information to which they were entitled by law: whether defendant was complying with campaign finance laws, the sources of his contributions, and the nature of his expenditures. Further, his false reports concealed illegal campaign activity from public exposure and possible investigation. We cannot meaningfully distinguish the creation of a false medical chart, as in *Henry,* from the formal filing of sworn false campaign finance disclosure reports with the SBOE, as in this case. In effect, defendant was creating a false campaign finance "chart" to deceive anyone seeking to review his conduct—much like the defendants in *Henry.*

Because this Court in *Grant* held that no judicial proceeding actually needed to be pending, the lack of any pending proceeding in this case is immaterial. Further, under the circumstances of this case, it does not matter that, in contrast to *Henry,* the State did not show that anyone had specifically begun to investigate whether defendant had violated campaign finance laws. We note that *Grant* did not require any pending investigation, but, rather, the obstruction of justice claim was based on the fact that the destruction of records blocked any investigation.

Here, in addition, the whole purpose of the campaign finance laws is to make the information available to the public at all times for voters' review, and the SBOE is required to investigate the reports filed with it after each election. *See* N.C. Gen. Stat. § 163-278.22 (2009) (requiring SBOE to maintain reports for 10 years and make them available to public); N.C. Gen. Stat. § 163-278.24 (2009) (requiring SBOE to determine, within four months after each election, "whether the statement conforms to law and to the truth"). Thus, when defendant filed his reports with the SBOE, he knew that his misinformation was blocking the SBOE and the public from uncovering and further investigating any improper campaign activity—just as the defendants allegedly intended in *Henry* and *Grant.*

Our view that, under *Henry* and *Grant*, defendant's conduct meets the requirements for obstruction of justice is supported by our General Assembly's enactments. Our Supreme Court in *Kivett* defined obstruction of justice as preventing, obstructing, impeding, or hindering " 'public or legal justice.' " 309 N.C. at 670, 309 S.E.2d at 462 (quoting 67 C.J.S. *Obstructing Justice* §§ 1, 2 (1978)). That definition prompts the question: What constitutes "public justice"? In the subchapter of our criminal code entitled "Offenses Against *Public Justice*" (emphasis added), the General Assembly included as offenses against "public justice," among others, offenses involving perjury, bribery, obstructing justice,[1] secret listening, and misconduct in public office. "Public justice" is, thus, a broad concept.

Defendant's preventing, obstructing, impeding, and hindering of the SBOE's and the public's ability to review what defendant was doing with respect to campaign contributions and funds constitutes preventing, obstructing, impeding, or hindering public justice. Because we hold that under *Kivett's* definition, this conduct amounts to common law obstruction of justice, we hold the trial court properly denied defendant's motion to dismiss.

II

**[2]** Defendant makes several related arguments as to the constitutionality of the charges filed against him. First, he argues that the trial court's allowing him to be tried for common law obstruction of justice based on the filing of inaccurate campaign finance disclosure reports amounted to an *ex post facto* application of the law. The basis of this argument is the same as his first contention on appeal: that defendant's type of conduct "was never a violation of the common law and is not a violation of the common law now."

This argument, however, overlooks the fact that "[t]here is no violation of the *ex post facto* clause . . . when a decision is applied retroactively because the clause applies to legislative and not judicial action." *State v. Rivens*, 299 N.C. 385, 392, 261 S.E.2d 867, 871 (1980). Since defendant is not arguing that a legislative act is being retroactively applied to him, *ex post facto* analysis is inapplicable. In any event, we have already held that defendant's conduct falls within *Kivett* and *Henry*, both of which predated defendant's conduct.

---

1. The Supreme Court held in *Kivett* that "[t]here is no indication that the legislature intended Article 30 [the obstruction of justice article within the subchapter] to encompass all aspects of obstruction of justice." 309 N.C. at 670, 309 S.E.2d at 462. The Court specifically pointed to Article 29, addressing bribery offenses, as encompassing obstruction of justice offenses as well.

Defendant also argues that his right to be free from the *ex post facto* application of law was violated when he received a greater punishment than would have been given if he had been charged with misdemeanors for failing to file accurate campaign finance reports under N.C. Gen. Stat. § 163-278.27 (2009) instead of with common law obstruction of justice. Defendant also points out that allowing the common law charge in effect permitted the State to sidestep the statute of limitations that barred it from proceeding under N.C. Gen. Stat. § 163-278.27 for the reports filed between 2000 and 2005.

Defendant, however, cites no authority that precludes the district attorney from proceeding on a common law charge when a potentially applicable statutory charge is barred by the statute of limitations or could result in a lesser sentence. Nor do we see how a choice to proceed under applicable common law implicates the *ex post facto* clause.

' In *State v. Ward,* 354 N.C. 231, 243, 555 S.E.2d 251, 260 (2001) (quoting *State v. Camacho,* 329 N.C. 589, 593, 406 S.E.2d 868, 871 (1991)), the Supreme Court recognized that pursuant to Article IV, Section 18 of our Constitution, " 'the responsibility and authority to prosecute all criminal actions in the superior courts is vested solely in the several District Attorneys of the State.' " That authority includes "[t]he ability to be selective in determining what cases to prosecute and what charges to bring against a particular defendant . . . ." 354 N.C. at 243, 555 S.E.2d at 260. The district attorney, in this case, was entitled to elect to proceed under the common law rather than under the campaign finance statutes.[2]

Defendant also contends the trial court's decision to enhance the common law obstruction of justice charge to make it a felony pursuant to N.C. Gen. Stat. § 14-3(b) (2009) was an *ex post facto* application of the law. N.C. Gen. Stat. § 14-3(b) provides that "[i]f a misdemeanor offense as to which no specific punishment is prescribed be infamous, done in secrecy and malice, or with deceit and intent to defraud, the offender shall, except where the offense is a conspiracy to commit a misdemeanor, be guilty of a Class H felony." The district

---

2. Defendant also argues that by charging defendant under the common law rather than under the statutory law, the State "interfered with a vested right," pointing to case law that a statute cannot be applied retroactively if it will interfere with rights that have vested. Although it is not entirely clear, it appears that defendant is contending that he had a vested right to the statute of limitations defense and to serving in the legislature (conviction under the statute would not have removed him from the legislature). Even assuming, without deciding, the existence of a vested right, no statute or even common law has been applied retroactively to interfere with such a right.

attorney had the discretion to decide to seek enhancement of the charge under this statute. We fail to see how the application of N.C. Gen. Stat. § 14-3(b), which was effective in its current form prior to defendants' acts, constitutes an *ex post facto* application of the law. We, therefore, find no error.

III

[3] Defendant also contends the trial court erred in instructing the jury on the elements of common law obstruction of justice. "It is well settled in this State that the trial judge is not required to charge the jury in the *exact* language requested by the defendant. A charge which conveys the substance of the requested instructions is sufficient." *State v. Smith*, 311 N.C. 287, 290, 316 S.E.2d 73, 75 (1984). "We review jury instructions contextually and in their entirety." *State v. Allen*, 193 N.C. App. 375, 381, 667 S.E.2d 295, 300 (2008). Defendant specifically argues, in this case, that the trial court's instructions "fundamentally altered the indictment which was neither in response to a motion by the District Attorney or on the Court's own motion."

The trial court instructed the jury as follows:

The defendant has been charged with the felony obstruction of justice. For you to find the defendant guilty of this felony offense, the State must prove three things beyond a reasonable doubt:

First, that the defendant obstructed justice by engaging in the following conduct. That the defendant, as a candidate seeking to obtain and maintain election to a seat in the North Carolina House of Representatives between January 1st of 2000 and January 31st of 2007, collected thousands of dollars in campaign contributions and failed to properly report receipt of these campaign contributions to the North Carolina State Board of Elections as by law required.

And further, that the defendant, after receiving such campaign contributions and having failed to report such receipts, did convert such campaign contributions to his own personal use and failed to report the use of expenditures of such campaign funds to the North Carolina State Board of Elections as by law required.

And further, that the defendant did knowingly and intentionally file incomplete and false disclosure forms with the State Board of Elections, which the defendant knew were incomplete, were not true and were not correct.

And further, that the defendant acted with the intent to conceal from the State Board of Elections and the public accurate information about his receipt and use of campaign money, and that he acted for the purpose of obstructing or hindering the proper enforcement of the campaign finance reporting laws of this state.

During deliberations, the jury asked the trial court for the definition of "intent to defraud." The trial court then instructed the jury:

. . . Intent to defraud means an intention to deceive another person and to induce such other person in reliance upon such deception to give up something or to forego something.

In the context of this case regarding this element, that is the third element of the crime charged, the State must prove that the defendant acted with deceit by misrepresenting material facts to the State Board of Elections, and that he did so with the intent that the State Board of Elections in relying upon such deception would forego the proper enforcement of the campaign finance laws of this state.

Defendant argues that these instructions "expanded the purpose of the concealment" by eliminating the requirement, set out in the indictment, that defendant was obstructing "public access to information" and "reform[ing] the question to center around the State Board of Elections, whether they [sic] relied upon [defendant's] deception, and whether the defendant interfered with the duties of the State Board of Elections." The indictment stated:

The jurors for the State upon their oath present that on or between January 1, 2000, and January 31, 2007, in Wake County, the defendant named above unlawfully, willfully and feloniously did, in secret and with malice, and with deceit and intent to defraud, obstruct public justice in his role as a candidate for the North Carolina House of Representatives by the way in which he concealed and failed to account for campaign contributions and expenditures. The defendant collected a substantial number and amount of campaign contributions, approximately $185,000 worth, and failed to report those campaign contributions as required by law to the North Carolina Board of Elections (The Board), and to the Campaign treasurer for the Thomas Wright Campaign Committee, also know [sic] as the Committee to Elect Thomas E. Wright, (collectively known as The Committee). The

defendant converted those campaign contributions to his own use and benefit, and also failed to report the expenditures of those contributions as required by law to The Board and to the treasurer of The Committee. By failing to report the contributions and expenditures, as required by law, the defendant filed and caused to be filed a campaign disclosure report with The Board that were [sic] not complete, true, and correct, in that the reports did not disclose campaign contributions and expenditures of The Committee. By concealing the financial activities of the defendant's political committee(s) and by filing and causing to be filed campaign disclosures reports that the defendant knew were not complete, true, and correct, the defendant obstructed public access to information that the defendant was required to disclose and concealed his illegal campaign activity. This act was in violation of the Common Law and against the peace and dignity of the State.

According to defendant, while the indictment thus specified that he was obstructing public access to the information, the instructions, especially in response to the jury's inquiry, focused on obstructing the SBOE's access. We believe that this is a distinction without a difference.

The legislature has required candidates to file specified reports, including certain required information, with the SBOE. N.C. Gen. Stat. §§ 163-278.9, -278.11 (2009). The legislature has granted the SBOE "the duty and power" to "make statements and other information filed with it available to the public" and to "preserve reports and statements filed" with it for a period of 10 years. N.C. Gen. Stat. § 163-278.22(4), (5). The SBOE also has "the duty and power" to make investigations regarding statements filed with it, N.C. Gen. Stat. § 163-278.22(7), and to determine, within four months after each election, "whether the statement conforms to law and to the truth," N.C. Gen. Stat. § 163-278.24.

Thus, the means by which the public obtains access to information about a candidate's contributions and expenditures is through the reports filed with the SBOE. It is the responsibility of the SBOE to maintain the reports, provide public access to the reports, and to determine the accuracy of the reports to ensure that the public has accurate information. Consequently, a candidate obstructs the public's access to the information required by law by obstructing the access of the SBOE. When a candidate conceals information from the SBOE or deceives the SBOE, he necessarily also does so as to the

public. We, therefore, hold that the trial court's instructions did not improperly deviate from the charge in the indictment.

No error.

Chief Judge MARTIN and Judge ELMORE concur.