## STATE v. ALBERT ANDERSON.

(Filed 27 March, 1929.)

**Asylums—Manager and Officers—Malfeasance, Nonfeasance, and Removal from Office—Arrest of Judgment.**

> While corrupt intent is not necessary to sustain a conviction under the provisions of C. S., 4384, making it a misdemeanor for a public officer to wilfully or negligently omit, etc., to discharge any of the duties of his office, it is required that the indictment sufficiently charge the offense of which such officer is accused; and where the action is against the superintendent of a State hospital for the insane, and the indictment charges that he removed or caused to be removed patients to his private farm and caused them to be worked thereon, without allegation of injury to the public or to the patients, or of personal gain to the defendant, the indictment fails to charge facts sufficient to constitute an offense under the statute, and defendant's motion in arrest of judgment should be allowed.

CRIMINAL ACTION, before *Devin, J.,* at November Term, 1928, of WAKE.

The bill of indictment contains fifteen counts, alleging certain acts of misfeasance and nonfeasance against the defendant, who is superintendent of State Hospital. At the conclusion of the evidence the trial judge excluded from the consideration of the jury all counts in said bill except the first, second, seventh, eighth, eleventh, twelfth and fifteenth. The jury rendered a verdict of guilty upon the seventh and eighth

counts only, and it was adjudged "that the defendant was not guilty as
to each and every count in the bill of indictment except the seventh and
eighth." The bill is drawn under C. S., 4384. The seventh and eighth
counts are as follows: (7th) "That on or about 30 December, 1927, and
at various other times, the said Albert Anderson, superintendent of State
Hospital at Raleigh, N. C., removed or caused to be removed patients,
whose names are unknown to the jurors at this time, to his private
property in Anderson Heights, and then and there caused said patients
to work on his, the said Anderson's private property, clearing out under-
brush, cutting roads, etc." (8th) "That on or about 30 June, 1928, and
at various other times, the said Anderson, superintendent of said State
Hospital, as aforesaid, removed or caused to be removed from said
hospital patients of said hospital to his private farm and there required
said patients to work harvesting hay."

The defendant in apt time lodged a motion in arrest of judgment and
for a directed verdict of not guilty upon each count in the bill.

The defendant admitted that at times he took patients in his own car
to his farm, and that he himself put on overalls and they worked to-
gether from thirty minutes to two hours doing such petty work as piling
brush or cutting down bushes or raking hay; that in going to and from
his farm he frequently took these patients for a ride through Raleigh
and near-by towns in order to provide mental diversion. The defendant
insisted that such petty work as was done on his farm was a method of
treatment in that patients were removed from the environment of the
institution and turned out into the open where they could think and act
for themselves. This method of dealing with those suffering with
mental diseases is known as occupational therapy. This method of
treatment was approved by many of the leading experts in the country,
who testified at the trial.

Dr. Davison, Dean of the Medical School at Duke University, testi-
fied: "There is a department of occupational therapy in every insane
hospital as well as general hospitals in order to fit the patients to go back
to normal life as soon as possible, and such work is very beneficial. It
is better to take patients away from the hospital in company with the
superintendent, and give them such employment as stacking hay or work
of that kind on premises away from the hospital. It increases the
patient's self-confidence by allowing him to get away from the hospital
grounds. I have had an opportunity to observe the general method of
hygiene and sanitation in the State Hospital in Raleigh, and it is the
very best run institution that I have ever seen. . . . I think it is
the taking of a patient away from the hospital grounds that is of special
advantage. Those in Baltimore would ask me to take them on my place,
and it would increase confidence in themselves. I think that there is an

advantage in working with the superintendent because they feel that they are in contact with the person in charge of the institution."

Other eminent experts expressed the same view, including Dr. Linville, superintendent State Hospital at Goldsboro; Dr. William McDougald, of Duke University; Dr. Thurman Kitchin, Dean of Medical School at Wake Forest; Dr. J. K. Hall, of Richmond; Dr. Laughinghouse, Secretary State Board of Health, and Dr. Rankin, of Duke University.

The court adjudged that the defendant should pay a fine of $500 and costs, from which judgment the defendant appealed.

*Walter D. Siler, Assistant Attorney-General, for the State.*

*Biggs & Broughton, R. N. Simms, Bunn & Arendell and R. L. McMillan for defendant.*

BROGDEN, J. C. S., 4384, under which the indictment was drawn, specifies two offenses:

1. That if any official named therein "shall wilfully omit, neglect or refuse to discharge any of the duties of his office . . . he shall be guilty of a misdemeanor."

2. If it shall be proved that such officer "wilfully and corruptly omitted, neglected or refused to discharge any of the duties of his office, etc., . . . such officer shall be guilty of misbehavior in office, and shall be punished by removal therefrom, etc."

The statute has been construed by this Court in several decisions. In indictments for neglect of duty corrupt intent need not be shown. *S. v. Leeper,* 146 N. C., 655, 61 S. E., 585; *Battle v. Rocky Mount,* 156 N. C., 329, 72 S. E., 354; *S. v. Berry,* 169 N. C., 371, 85 S. E., 387. The foundation of liability to indictment of such officers under the statute is thus expressed in *S. v. Hatch,* 116 N. C., 1003, 21 S. E., 430: "However honest the defendants may be (and their honesty is not called in question) the public have a right to be protected against the wrongful conduct of their servants, if there is carelessness amounting to a wilful want of care in the discharge of their official duties, which injures the public."

It is to be observed that the essentials of the crime as prescribed are: first, a wilful neglect in the discharge of official duty; and second, injury to the public.

Applying the rules of law to the seventh and eighth counts in the bill of indictment, it would appear that no crime contemplated by the statute is charged in said counts. There is no allegation of injury to the public or that the defendant derived a profit from the petty labor of the patients; neither is there allegation as to the violation of any

specific duty imposed by any statute of the State or by any rule or regulation duly prescribed by the directors of the institution. Moreover, there is no allegation that any patient was injured or harmed in any manner.

These defects appear upon the face of the bill, and the motion in arrest of judgment should have been allowed. *S. v. Brady,* 177 N. C., 587, 99 S. E., 7; *S. v. McKnight, ante,* 259.

Error.