STATE OF NORTH CAROLINA v. CHESTER FLETCHER WALLACE

No. 9121SC67

(Filed 19 November 1991)

1. Evidence and Witnesses § 526 (NCI4th) — robbery — toboggan — not used in crime — admission not prejudicial

There was no prejudicial error in an armed robbery prosecution from the erroneous admission of a toboggan with holes cut in the front, like a mask, where there was no evidence that masks were used in the robbery. In light of the substantial evidence of defendant's guilt, there was no reasonable possibility that the verdict returned by the jury was affected by the introduction of the toboggan testimony.

Am Jur 2d, Robbery § 55.

2. Evidence and Witnesses § 526 (NCI4th) — robbery — bullets — admissible

Bullets found in the vehicle defendant was driving when arrested were admissible in an armed robbery prosecution where four witnesses testified that pistols were used in the robbery, two witnesses testified that defendant planned the armed robbery and instructed the others, one witness testified that defendant used a loaded gun to coerce his participation, and the same witness testified that defendant supplied the pistol the witness used in the robbery. The trial court did not abuse its discretion by admitting the testimony in light of the probative value of evidence in regard to defendant's participation, the only issue at trial, and the evidence would not have an undue tendency to improperly influence the jury in light of the uncontradicted evidence of defendant's guilt.

Am Jur 2d, Robbery §§ 55, 58.

3. Criminal Law § 793 (NCI4th) — armed robbery — acting in concert — essential element — failure to instruct

The trial court's failure to instruct on presence at the scene in a prosecution for armed robbery under the theory of acting in concert constituted error because the two essential elements of acting in concert are presence at the scene of the crime and acting together with another who does the acts necessary to constitute the crime pursuant to a common plan

or scheme. However, defendant failed to object at trial and cannot obtain relief absent plain error.

**Am Jur 2d, Criminal Law § 168; Robbery §§ 10, 11, 71.**

**4. Criminal Law § 886 (NCI4th) — armed robbery — acting in concert — instructions — no reversible error per se**

There was no reversible error per se in a prosecution for armed robbery under the theory of acting in concert where the trial court failed to instruct the jury on one of the essential elements of acting in concert, presence at the scene. An instructional error of this type is subject to either a harmless error or plain error analysis depending on whether defendant lodged an objection at trial or raised the error for the first time on appeal.

**Am Jur 2d, Criminal Law § 168; Robbery §§ 10, 11, 71.**

**5. Criminal Law § 887 (NCI4th) — armed robbery — acting in concert — instructions — no plain error**

There was no plain error in a prosecution for armed robbery under the theory of acting in concert where the court did not instruct the jury on an essential element of acting in concert, presence at the scene. The failure to instruct on presence did not have a probable impact on the jury's finding of guilt because there was substantial evidence of defendant's constructive presence at the scene of the robbery.

**Am Jur 2d, Criminal Law § 168; Robbery §§ 10, 11, 71.**

APPEAL by defendant from judgment entered 12 June 1990 in FORSYTH County Superior Court by *Judge James M. Long.* Heard in the Court of Appeals 9 October 1991.

*Lacy H. Thornburg, Attorney General, by Daniel F. McLawhorn, Special Deputy Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Benjamin Sendor, Assistant Appellate Defender, for defendant-appellant.*

GREENE, Judge.

Defendant appeals from a judgment entered 12 June 1990, which judgment was based upon a jury verdict convicting defendant

of robbery with a dangerous weapon, N.C.G.S. § 14-87 (1986), under the theory of acting in concert.

The State's evidence tends to show that on the afternoon of 31 January 1990, defendant, Christopher White (White), Allyn Buie (Buie), and a man named Tim traveled in defendant's car from Durham to Greensboro where they stopped at a motel and rented a room. The men spent a short time in the motel room discussing plans to commit a robbery, and then returned to the car and proceeded to Winston-Salem. The evidence at trial tended to establish that it was defendant's idea to commit the robbery. Once in Winston-Salem, the men stopped at a store, but determined that it was too small to rob. They drove on to Central Carolina Grocery (the Grocery), and Buie, White, and Tim went in. Defendant remained in the car, the plan being that he would wait in the vicinity in order to help the three men escape when they had completed the robbery.

Joe Choplin (Choplin), the manager of the Grocery, and his son William were present when Buie, White, and Tim entered the store. White pointed a gun at Choplin and demanded money. Choplin testified that he ducked behind a counter and grabbed a bag containing a pistol which belonged to his son. Choplin stated that he tossed the bag at White and said, "Here's the money," and that the bag fell on the floor. Subsequently, according to Choplin, White became agitated, struck Choplin in the face with the barrel of his gun, and ran out of the store with another man whom Choplin could not identify. Once the men were gone, Choplin searched for the bag and gun, but never found either item. White testified that he did not strike Choplin with his pistol, and denied taking the bag and gun.

Buie testified that he became scared during the robbery and left the store. Buie stated that twenty to twenty-five seconds after he left the store, defendant drove up and told Buie to enter the car. Defendant then dropped Buie off near a wooded area and told him to wait there while defendant went to look for White and Tim. Defendant found Tim, but could not find White. White testified that he was not familiar with the area and became lost after he ran out of the store. Defendant, Buie, and Tim drove back to Greensboro. White remained in the vicinity of the store and was apprehended by Winston-Salem police. In the early morning hours of 1 February 1990, a Greensboro police officer, using

STATE v. WALLACE

[104 N.C. App. 498 (1991)]

information supplied by White, arrested defendant after the officer watched defendant leave the motel room. Buie was arrested a few hours later. Tim was never apprehended.

Winston-Salem police officers conducted an inventory search of the vehicle defendant was driving at the time of his arrest, and found, among other things, 61 .38 caliber bullets, one spent .38 caliber shell, and a toboggan with holes cut out in the front like a mask. The car, a burgundy Nissan 200 SX, was registered to Marsha Van Hook of Durham, defendant's wife. The evidence showed that the Nissan was not the car involved in the robbery of the Grocery. The record reveals that police recovered from White the gun used by White during the robbery. This gun, which was made a part of the record on appeal, contained no visible caliber markings. Buie testified that during the robbery he used a gun which had been given to him by defendant. There is no evidence of its caliber in the record, and Buie testified that it was not loaded during the robbery.

Defendant did not testify and offered no evidence.

---

The issues presented are I) whether the trial court committed prejudicial error by admitting testimony that a detective found bullets and a toboggan cut out like a mask in a search of the car defendant was driving when arrested; and II) whether the trial court committed plain error by failing to instruct the jury that proof of a defendant's actual or constructive presence at the scene of the crime is required in order to prove defendant's guilt under the theory of acting in concert.

I

[1] Defendant contends that the trial court erred by admitting, over defendant's objection, testimony by Winston-Salem Police Department Detective R.D. Peddycord (Peddycord) that Peddycord found bullets and a cut-out toboggan during an inventory search of the car defendant was driving when arrested. Defendant argues that the State failed to link these items to the charged offense, and that therefore the testimony was irrelevant. Defendant further argues that this evidence was inflammatory and prejudicial because it impliedly characterized defendant as violent and dangerous.

Evidence is admissible at trial if it is relevant and its probative value is not substantially outweighed by, among other things, the

danger of unfair prejudice. N.C.G.S. § 8C-1, Rules 402 and 403 (1988). Relevant evidence is defined as "any evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C.G.S. § 8C-1, Rule 401 (1988). Rule 401 sets a standard to which trial judges must adhere in determining whether proffered evidence is relevant; at the same time, this standard gives the judge great freedom to admit evidence because the rule makes evidence relevant if it has *any* logical tendency to prove any fact that is of consequence. *See* C. Wright & K. Graham, 22 Federal Practice and Procedure § 5166 (1978) (hereinafter Wright & Graham); *see also State v. Sloan*, 316 N.C. 714, 724, 343 S.E.2d 527, 533 (1986). Thus, even though a trial court's rulings on relevancy technically are not discretionary and therefore are not reviewed under the abuse of discretion standard applicable to Rule 403, such rulings are given great deference on appeal. Wright & Graham at § 5166.

### *Toboggan*

There is no evidence in the record that masks were used in the commission of the robbery, nor does the State make such a contention. Items such as this toboggan which have not been connected to the crime charged and which have no logical tendency to prove any fact in issue. are irrelevant and inadmissible. *See State v. Patterson*, 59 N.C. App. 650, 653, 297 S.E.2d 628, 630 (1982) (introduction of testimony about sawed-off shotgun found in defendant's car where no evidence connected weapon with crime charged was erroneous). However, when the trial court erroneously admits irrelevant evidence, the defendant must show that there is a "reasonable possibility that, had the error in question not been committed, a different result would have been reached" at trial. N.C.G.S. § 15A-1443(a) (1988); *see also State v. Norwood*, 303 N.C. 473, 479, 279 S.E.2d 550, 554 (1981).

The State presented the testimony of Buie and White—two eyewitnesses to defendant's participation in the robbery. These witnesses testified that defendant planned the robbery, selected the store to be robbed, drove the participants to the location, gave them instructions, gave one of them a gun, and waited in the vicinity in order to help the participants escape after the robbery. Defendant argues that he is entitled to a new trial because, had the trial court not erroneously admitted the toboggan testimony,

there is a "reasonable possibility" that the jury would not have convicted defendant since the only evidence of his guilt was the uncorroborated testimony of two biased accomplices. We disagree. It is well settled in North Carolina that uncorroborated accomplice testimony is sufficient to sustain a conviction. *State v. Brooks*, 49 N.C. App. 14, 20, 270 S.E.2d 592, 597 (1980), *disc. rev. denied*, 301 N.C. 723, 276 S.E.2d 285 (1981). Furthermore, Buie and White, with immaterial exceptions, testified consistently regarding defendant's participation in the robbery. In light of the substantial evidence of defendant's guilt, we conclude that there is no reasonable possibility that the verdict returned by the jury was affected by the erroneous introduction of the toboggan testimony. *See State v. Milby*, 302 N.C. 137, 142, 273 S.E.2d 716, 720 (1981) (even if introduction of pistols seized from defendants at time of arrest was error, no prejudice in view of the evidence of guilt presented by the State).

### Bullets

[2]   A thorough review of the record shows that Peddycord's testimony describing the bullets was relevant. Four witnesses (Choplin, Choplin's son, White, and Buie) testified at trial that pistols were used in the commission of the robbery. Both Buie and White testified that defendant planned the armed robbery and gave the others instructions concerning its implementation. In fact, Buie testified that defendant used a loaded gun to coerce Buie into participating in the robbery. Buie also testified that defendant supplied the pistol Buie used in the robbery. There is no evidence in the record of its caliber. That defendant had pistol ammunition in his possession only a few hours after the commission of a robbery in which pistols were used and in which he has been implicated has a tendency to make defendant's participation in the robbery "more probable . . . than it would be without the evidence." The jury could decide how much weight to give this evidence. *See State v. Sanchez*, 328 N.C. 247, 250, 400 S.E.2d 421, 424 (1991) (once disputed evidence is admitted at trial, its weight and credibility are for the jury).

Although we have determined that the bullet testimony is relevant, relevant evidence may nevertheless be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. N.C.G.S. § 8C-1, Rule 403 (1988). As used in Rule 403, "unfair prejudice" means "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, as an

emotional one." *State v. Mason*, 315 N.C. 724, 731, 340 S.E.2d 430, 435 (1986). In North Carolina, whether or not to exclude evidence under Rule 403 is a matter within the sound discretion of the trial court. *Id.* at 731, 340 S.E.2d at 435. Here, the trial court did not abuse its discretion by admitting Peddycord's bullet testimony in light of the probative value of this evidence with regard to the only issue at trial: defendant's participation in an armed robbery. Moreover, in light of the uncontradicted evidence of defendant's guilt, we do not believe that the bullet evidence would have an undue tendency to improperly influence the jury.

II

[3] Defendant next contends that the trial court committed plain error by failing to instruct the jury that proof of a defendant's guilt under the theory of acting in concert requires proof of the defendant's actual or constructive presence at the scene of the crime. Because this contention necessarily raises the threshold question of whether the trial court's failure to instruct on presence was error at all, we first address the propriety of the court's concerted action instruction.

In North Carolina, a trial judge is not required to follow any particular form in giving instructions and has wide discretion in presenting the issues to the jury. *State v. Harris*, 306 N.C. 724, 728, 295 S.E.2d 391, 393 (1982). A judge is not required to state, summarize, or recapitulate the evidence, or to explain the application of the law to the evidence, although he may elect to do so in his discretion. N.C.G.S. § 15A-1232 (1988); *see also State v. Carter*, 326 N.C. 243, 247, 388 S.E.2d 111, 114 (1990). A trial judge must, however, charge every essential element of the offense. *State v. Hairr*, 244 N.C. 506, 509, 94 S.E.2d 472, 474 (1956); *accord State v. Earnhardt*, 307 N.C. 62, 70, 296 S.E.2d 649, 654 (1982).

Our Supreme Court in *State v. Williams*, 299 N.C. 652, 263 S.E.2d 774 (1980), specifically delineated two essential elements of acting in concert: 1) presence at the scene of the crime, and 2) acting together with another who does the acts necessary to constitute the crime pursuant to a common plan or purpose. *Williams*, 299 N.C. at 656-57, 263 S.E.2d at 777-78. The presence required for acting in concert can be either actual or constructive. *State v. Westbrook*, 279 N.C. 18, 41-42, 181 S.E.2d 572, 586 (1971), *vacated in part on other grounds, Westbrook v. North Carolina*, 408 U.S. 939, 33 L.Ed.2d 761 (1972). Because presence at the scene of the

crime is an essential element of acting in concert, a trial court must instruct on this element when a defendant is charged with a crime under this theory. *See Hairr, supra.* The trial court's failure to do so here constituted error. However, defendant failed to object to the instruction at trial and, therefore, cannot obtain relief unless the error constitutes plain error. *State v. Odom,* 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983).

Defendant contends that the trial court's erroneous instruction constitutes "plain error *per se.*" In other words, defendant argues that a trial court's failure to instruct the jury on an essential element of the crime requires automatic reversal of a conviction. Alternatively, defendant argues that the trial court committed plain error by failing to instruct the jury on presence.

### Plain Error Per Se

[4] Although most constitutional violations are subject to a "harmless error" analysis (i.e., reversal of conviction not required if reviewing court deems error harmless beyond a reasonable doubt), some errors are so gross that their commission requires automatic reversal of a conviction. *See Chapman v. California,* 386 U.S. 18, 17 L.Ed.2d 705 (1967) (use of coerced confession, complete denial of counsel, and denial of impartial judge can never be treated as harmless error); *see also* N.C.G.S. § 15A-1443(b) (1988), Official Commentary (North Carolina's codification of harmless error principle reflects the standard of prejudice with regard to violation of the defendant's rights under the Constitution of the United States as set out in *Chapman*); *State v. Huff,* 325 N.C. 1, 32-35, 381 S.E.2d 635, 653-54 (1989), *cert. granted and judgment vacated on other grounds, Huff v. North Carolina,* --- U.S. ---, 111 L.Ed.2d 777 (1990) ("harmless beyond a reasonable doubt" is also proper standard of prejudice for violations of State Constitution). Generally, instructional errors are subject to a harmless error analysis. *See Pope v. Illinois,* 481 U.S. 497, 95 L.Ed.2d 439 (1987) (harmless error analysis applied to obscenity instruction which erroneously charged jury to apply contemporary community standard to the "value" element of the offense); *Rose v. Clark,* 478 U.S. 570, 92 L.Ed.2d 460 (1986) (harmless error analysis applied to malice instruction in murder trial which unconstitutionally shifted burden of proof to defendant). An instructional error of the type here presented is not unlike the errors at issue in *Pope* and *Rose* and is not, as defendant urges, reversible error *per se;* instead, such an error

is subject to either a harmless error or plain error analysis, depending on whether the defendant lodged an objection at trial or raised the error for the first time on appeal. *See Hennessy v. Goldsmith*, 929 F.2d 511, 515 (9th Cir. 1991); *United States v. Kerley*, 838 F.2d 932, 939 (7th Cir. 1988).

## *Plain Error*

**[5]** "In deciding whether a defect in the jury instruction constitutes 'plain error,' the appellate court must examine the entire record and determine if the instructional error had a probable impact on the jury's finding of guilt." *Odom*, 307 N.C. at 661, 300 S.E.2d at 378-79 (*citing United States v. Jackson*, 569 F.2d 1003 (7th Cir.), *cert. denied*, 437 U.S. 907, 57 L.Ed.2d 1137 (1978).). Only in the "rare case" will an improper instruction "justify reversal of a criminal conviction when no objection has been made at trial." *Id.* at 661, 300 S.E.2d at 378 (*quoting Henderson v. Kibbe*, 431 U.S. 145, 154, 52 L.Ed.2d 203, 212 (1977)).

If upon review of the entire record there is not substantial evidence of the defendant's presence, actual or constructive, at the scene of the crime, the failure to instruct on presence would be plain error. *See State v. Gilmore*, 330 N.C. 167, 409 S.E.2d 888 (1991) (where there is not "sufficient" evidence of presence at scene of crime, charge on presence required). Constructive presence is not determined by the defendant's actual distance from the crime; the accused simply must be near enough to render assistance if need be and to encourage the actual perpetration of the crime. *State v. Wiggins*, 16 N.C. App. 527, 531, 192 S.E.2d 680, 683 (1972). Thus, the driver of a "get-away" car may be constructively present at the scene of a crime although stationed a convenient distance away. *Id.* at 530, 192 S.E.2d at 682-83; *see also State v. Lyles*, 19 N.C. App. 632, 636, 199 S.E.2d 699, 702 (1973) (defendant driver of "get-away" car was "present" at scene of crime even though he was waiting in trailer park located 100 feet behind store being robbed); *but cf. State v. Buie*, 26 N.C. App. 151, 215 S.E.2d 401 (1975) (defendant not constructively present where he arranged for others to steal tools from a sawmill, and, in response to actual participants' telephone call to defendant's nearby home, picked up and drove participants away from scene of crime).

This record reveals substantial evidence of defendant's constructive presence at the scene of the robbery. The evidence shows

that defendant drove Buie, White, and Tim to the Grocery, dropped them off, and then waited a few blocks away in order to assist the men with their escape. After the robbery, defendant drove himself, Buie, and Tim back to Greensboro. Therefore, the trial court's failure to instruct on presence did not have a probable impact on the jury's finding of guilt. Accordingly, the instructional omission does not amount to plain error. *See State v. Barnes*, 91 N.C. App. 484, 488, 372 S.E.2d 352, 354 (1988), *aff'd as modified on other grounds*, 324 N.C. 539, 380 S.E.2d 118 (1989) (because evidence showed defendant was either actually or constructively present at all crimes for which he was charged under concerted action theory, trial court's failure to instruct jury on element of presence did not amount to plain error).

No error.

Chief Judge HEDRICK and Judge EAGLES concur.