An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored but may be permitted in accordance with the provisions of Rule 30(e)(3) of the *North Carolina Rules of Appellate Procedure*.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-778

Filed 16 July 2025

Brunswick County, Nos. 18 CRS 053199, 19 CRS 2115

STATE OF NORTH CAROLINA

v.

MICHAEL CHRISTIAN SIMMONS

Appeal by Defendant from judgments entered 1 February 2023 by Judge James G. Bell in Brunswick County Superior Court. Heard in the Court of Appeals 28 May 2024.

> *Attorney General Jeff Jackson, by Special Deputy Attorney General Orlando L. Rodriguez, for the State.*

> *Q Byrd Law, by Attorney Quintin D. Byrd, and The Law Offices of Gregory Reynard Williams, PLLC, by Attorney Gregory R. Williams, for defendant-appellant.*

STADING, Judge.

Michael Christian Simmons ("Defendant") appeals from convictions for misdemeanor obstruction of justice and misdemeanor willful failure to discharge duties. After careful consideration, we hold no error in part and vacate in part.

## I.    Background

This case concerns the actions of Defendant, serving as a police officer and working a second job while on duty.  A grand jury returned true bills of indictment charging Defendant with three counts of felony obtaining property by false pretenses, one count of misdemeanor willful failure to discharge duties, and one count of felony obstruction of justice.  Defendant moved for a bill of particulars, but the trial court denied his request.

At Defendant's trial, the State's evidence tended to show Defendant was a lieutenant with the Southport Police Department ("SPD"), second in command under the Chief of Police, Gary Smith.  During the same period, Defendant also drove trucks for Oak Island Transport.  SPD policy permitted secondary employment, but police officers were prohibited from performing work for other employers while on duty, and the secondary employment was not to interfere with the police officer's performance with SPD.

In early 2018, Bruce Oakley, the City Manager, was informed of concerns about Chief Smith's and Defendant's secondary employment.  Mr. Oakley discussed the matter with Chief Smith, who represented that the driving work happened outside of SPD shifts.  In April 2018, the State Bureau of Investigation ("SBI") received a call from Officer Jonathan Elliot of SPD, who believed Defendant and Chief Smith were working shifts for Oak Island Transport while on duty with SPD.  SBI agents met with SPD First Sergeant Kevin Long, who indicated Chief Smith's and Defendant's

secondary employment overlapped with their SPD shifts. Sergeant Long stated, "it was becoming a frequent thing that [Chief Smith and Defendant] were missing from their post at the police department," and "he was having to basically run the day-to-day operations of the police department." He maintained, "often [Chief Smith and Defendant] would clock in for work, [and] leave at some point . . . . A lot of times they were requesting other officers to transport them to the truck[ ] yard. Sometimes they would return back; sometimes they were just gone for the rest of the day."

The SBI agents obtained a court order to place a surveillance camera at Oak Island Transport. They observed both Chief Smith and Defendant arrive, in uniform, at the truck yard in Defendant's SPD vehicle. While conducting surveillance, the SBI agents became aware Defendant received a traffic violation in a different county while driving for Oak Island Transport—at a time when he had indicated he was engaged in community policing in Southport. The SBI agents obtained a search warrant for records from the City of Southport, SPD, and Oak Island Transport.

After reviewing the records, the SBI agents identified multiple dates where Defendant's work for SPD and Oak Island Transport overlapped. On some occasions, there was no direct evidence of hours overlapping between the two jobs. But there were at least eight days, between March and May 2018, whereby Defendant logged overlapping time with SPD and Oak Island Transport.

Several SPD officers testified about their knowledge of Defendant's secondary employment. Detective Riley Ransom testified that he knew Defendant was driving

for Oak Island Transport, though he was not aware if it was happening during Defendant's SPD shifts. Detective Ransom stated he had dropped Defendant off at the truck yard "a few times" and occasionally, Defendant asked him to return and pick him up later.

Officer Elliot testified that he knew Defendant was working for Oak Island Transport during his SPD shifts because Defendant would "[d]isappear," and Defendant's and Chief Smith's cars were parked at "the truck yard." According to Officer Elliot, Defendant "was supposed to be training [him], and [Defendant] was unavailable." Officer Elliot added, there were two officers typically on patrol together and other officers at the station during day shifts, but on night shifts there were no other officers available if Defendant left.

Sergeant Long testified that Defendant would ask to be dropped off at Oak Island Transport several times a week while on duty for SPD, sometimes staying away for the remainder of the day. He recalled Defendant discussing his driving routes. Sergeant Long noted that if Defendant and Chief Smith was not available due to their secondary employment, he was tasked with "running all administrative responsibilities." While it was common for officers to clock each other in and out, Sergeant Long testified that he never clocked Defendant out when he went to Oak Island Transport, nor did Defendant ask him to do so.

Officer Daniel Brannon Gray testified that he received information from some citizens regarding Chief Smith's and Defendant's secondary employment, which he

then presented to City Manager Oakley in early 2018. He "was concerned about the overall well-being of . . . the city and the agency." Officer Gray testified that Chief Smith and Defendant would let others know when they were "out riding" for Oak Island Transport. Officer Gray also became aware of the citation Defendant received while driving a truck in another county, while he had logged time for SPD community policing, which Officer Gray brought to the attention of the SBI.

At the close of the State's evidence, Defendant moved to dismiss his charges for insufficient evidence. The trial court denied Defendant's motion. Defendant renewed his motion to dismiss at the close of all evidence, which the court again denied. During the charge conference, Defendant raised concerns about the wording of jury instructions for the three charges of obtaining property by false pretenses, but he did not object or request any changes to the remainder of the instructions or the verdict sheets.

Following deliberations, the jury returned verdicts of not guilty on the three counts of felony obtaining property by false pretenses, and verdicts of guilty for the misdemeanor counts of obstruction of justice and willful failure to discharge duties.[1] The trial court sentenced Defendant to two terms of forty-five days in the county jail, suspended for twelve months of supervised probation that would transfer to

---

[1] The trial court instructed the jury on felony and misdemeanor obstruction of justice. The jury's verdict sheet reflected the trial court's instruction on felony and misdemeanor obstruction of justice.

unsupervised probation upon payment of court costs. Defendant entered his notice of appeal.

## II.    Jurisdiction

This Court has jurisdiction to consider Defendant's appeal pursuant to N.C. Gen. Stat. §§ 7A-27(b)(1)  ("From any final judgment of a superior court . . . .") and 15A-1444(a) (2023) ("A defendant who has entered a plea of not guilty to a criminal charge, and who has been found guilty of a crime, is entitled to appeal as a matter of right when final judgment has been entered.").

## III.    Analysis

Defendant raises several issues for our consideration: whether the indictment for obstruction of justice is insufficient; whether the trial court committed error by denying Defendant's motion to dismiss the charges of obstruction of justice and willful failure to discharge a duty for insufficient evidence; whether the trial court committed plain error in its instruction to the jury on the charge of willful failure to discharge a duty; and whether the cumulative effect of the asserted errors denied Defendant a fair trial.

### A. Obstruction of Justice

Defendant contends the indictment for obstruction of justice was fatally defective since it did not identify the specific "justice" which he allegedly obstructed. In his reply brief, Defendant maintains we are bound to agree with his indictment argument on account of this Court's decision in *State v. Coffey*.  292 N.C. App. 463,

898 S.E.2d 359 (2024). But that case predates our Supreme Court's decision in *State v. Singleton*, setting out the paradigm which directs our analysis. 386 N.C. 183, 208, 900 S.E.2d 802, 819 (2024); *see also State v. Ledbetter*, 243 N.C. App. 746, 756, 779 S.E.2d 164, 171 (2015) ("We are bound by decisions of the Supreme Court of North Carolina."). Defendant also contests the trial court's denial of his motion to dismiss for insufficient evidence of the "specific act of justice," and "specific intent to impede or obstruct" justice.

### 1. Indictment

Defendant has taken issue with the obstruction of justice indictment's "fail[ure] to cite a single instance in which a specific course of justice was impeded by [his] actions." He continues, there is "no[ ] allegation in the indictment [ ] that any officer was unable to perform a task because of [his] alleged behavior."

"An indictment is a written accusation by a grand jury, filed with a superior court, charging a person with the commission of one or more criminal offenses." *State v. Stewart*, 386 N.C. 237, 240–41, 900 S.E.2d 652, 655 (2024) (internal quotation marks and citation omitted). It must contain a "plain, concise factual statement in each count which, without allegations of an evidentiary nature, asserts facts supporting every element of a criminal offense and the defendant's commission thereof with sufficient precision clearly to apprise the defendant . . . of the conduct which is the subject of the accusation." N.C. Gen. Stat. § 15A-924(a)(5) (2023). "[O]ur Rules of Appellate Procedure align with the Criminal Procedure Act by

differentiating between jurisdictional and non-jurisdictional pleading issues and by automatically preserving both for appellate review." *Singleton*, 386 N.C. at 208, 900 S.E.2d at 819. "Thus, issues related to alleged indictment defects, jurisdictional or otherwise, remain automatically preserved despite a defendant's failure to object to the indictment at trial." *Id.* at 210, 900 S.E.2d at 821. "The sufficiency of an indictment is a question of law reviewed de novo." *State v. White*, 372 N.C. 248, 250, 827 S.E.2d 80, 82 (2019).

We first consider the indictment in view of the "two distinct species of [ ] deficiencies"— jurisdictional and non-jurisdictional. *Singleton*, 386 N.C. at 196, 900 S.E.2d at 812. As noted in *Singleton*, jurisdiction is a power "granted by the people who speak through their constitutions and statutes, not by an indictment drafted by a prosecutor." *Id.* Examples of jurisdictional defects include "an indictment charging the accused with wearing a pink shirt on a Wednesday—conduct that does not constitute a criminal offense," or one "charging a defendant with a crime committed in another state." *Id.* at 205–06, 900 S.E.2d at 818. Such "defects are rare, only arising where an indictment wholly fails to allege a crime against the laws or people of this State." *Id.* at 184, 900 S.E.2d at 805.

Although "an indictment must charge a crime to be valid, [ ] superficial errors in the manner or form of the charge shall not impact the validity of the indictment and cannot affect the court's jurisdiction over the charged crime." *Id.* at 199, 900 S.E.2d at 814. The allegation of criminal conduct activates a court's jurisdiction, not

a perfect recitation of elements. *Id.* (citation omitted). "[F]ailure to allege with sufficient precision facts and elements of a crime" constitutes a non-jurisdictional defect. *Id.* To seek relief from a non-jurisdictional defect, "a defendant . . . must demonstrate not only that such an error occurred, but also that such error was prejudicial." *Id.* at 210, 900 S.E.2d at 821; *see also Stewart*, 386 N.C. at 240, 900 S.E.2d at 655 ("A defendant challenging an indictment as defective must show that the indictment contained a statutory or constitutional defect and that such error was prejudicial.").

Here, count III of the indictment charged that Defendant:

> [U]nlawfully, willfully and feloniously did OBSTRUCT JUSTICE BY, AS LIEUTENANT OF POLICE, OMIT AND NEGLECT TO DISCHARGE A DUTY OF HIS OFFICE, BY WORKING SECONDARY EMPLOYMENT WHILE ON DUTY AT THE CITY OF SOUTPORT POLICE DEPARMTENT, AND DID THEREBY CAUSE INJURY TO THE PUBLIC. THE OFFENSE WAS DONE WITH DECEIT AND INTENT TO DEFRAUD.

It further notes obstruction of justice is a common law crime, and lists a date range of offense of "02/01/2018 – 07/25/2018."

While the indictment contains language charging Defendant with a felony, the jury convicted him of misdemeanor obstruction of justice. The essential elements of misdemeanor obstruction of justice are: (1) Defendant unlawfully and willfully, (2) obstructed justice. *See State v. Cousin*, 233 N.C. App. 523, 530, 757 S.E.2d 332, 338 (2014) (citation omitted); *see also State v. Eastman*, 113 N.C. App. 347, 353, 438

S.E.2d 460, 463–64 (1994). Defendant does not assert that the indictment fails to charge a crime. Instead, Defendant's challenge to the indictment is that facts were not alleged with sufficient precision to support the second element of the crime—a non-jurisdictional defect for which Defendant raises no argument of inadequate notice of the charge or prejudice. Having determined Defendant's non-jurisdictional challenge lacks merit, we next consider Defendant's argument about the insufficiency of evidence. *See State v. McCulloch*, 244 N.C. App. 778, 781 S.E.2d 531 (2016) ("In light of our holding on this issue, we need not address the additional arguments contained in Defendant's brief.").

### 2. *Motion to Dismiss*

Defendant also argues "the State failed to offer any evidence from which a juror could determine [he acted] to . . . obstruct[ ] justice . . . ." Defendant posits that "[t]he State produced no evidence [he] acted with a specific intent to . . . obstruct any . . . justice proceeding." Defendant thereby challenges the sufficiency of evidence underlying the essential elements of misdemeanor obstruction of justice.

"Whether the State presented substantial evidence of each essential element of the offense is a question of law; therefore, we review the denial of a motion to dismiss de novo." *State v. Tucker*, 380 N.C. 234, 236, 867 S.E.2d 924, 927 (2022) (citation omitted). "Under a de novo review, this Court 'considers the matter anew and freely substitutes its own judgment' for that of the lower tribunal." *State v. Miller*, 292 N.C. App. 519, 521, 898 S.E.2d 792, 795 (2024) (citations omitted). "When

a Defendant moves to dismiss a charge against him on the ground of insufficiency of the evidence, the trial court must determine 'whether there is substantial evidence of each essential element of the offense charged and of the defendant being the perpetrator of the offense.'" *State v. Garcia*, 358 N.C. 382, 412, 597 S.E.2d 724, 746 (2004) (quoting *State v. Crawford*, 344 N.C. 65, 73, 472 S.E.2d 920, 925 (1996)). "Substantial evidence is relevant evidence that a reasonable person might accept as adequate . . . or would consider necessary to support a particular conclusion." *Garcia*, 358 N.C. at 412, 597 S.E.2d at 746 (internal quotation marks and citations omitted). Such evidence is considered in the light most favorable to the State. *State v. Osborne*, 372 N.C. 619, 626, 831 S.E.2d 328, 333 (2019).

At common law it is an offense to do any act which prevents, obstructs, impedes or hinders public or legal justice. *In re Kivett*, 309 N.C. 635, 670, 309 S.E.2d 442, 462 (1983). "If common law obstruction of justice is done with deceit and intent to defraud it is a felony." *State v. Ditenhafer*, 373 N.C. 116, 128, 834 S.E.2d 392, 400 (2019) (internal quotation marks and citation omitted). Since a showing of deceit and intent to defraud are unnecessary to prove misdemeanor obstruction of justice, the essential elements are: (1) Defendant unlawfully and willfully, (2) obstructed justice. *See Cousin*, 233 N.C. App. at 530, 757 S.E.2d at 338 (citation omitted); *see also Eastman*, 113 N.C. App. at 353, 438 S.E.2d at 463–64. "Obstruction of justice can take a variety of forms, and is very fact-specific and context-driven." *Doe v. Putney*, No. 3:18-cv-00586-RJC-DSC, 2022 U.S. Dist. LEXIS 144138, at *44 (W.D.N.C. Aug. 12, 2022)

(internal quotation marks and citation omitted); *see also Braswell v. Medina*, 255 N.C. App. 217, 229, 805 S.E.2d 498, 507 (2017) ("North Carolina is one of a small minority of jurisdictions that also recognizes a *civil* cause of action for obstruction of justice").

While a number of cases from our obstruction of justice jurisprudence concern a judicial proceeding or investigation, a proceeding or investigation is not necessary for the offense to apply. *See Kivett*, 309 N.C. at 670, 309 S.E.2d at 462 ("Respondent's conduct with respect to the attempt to prevent the convening of the grand jury would support a charge of common law obstruction of justice."); *see also Ditenhafer*, 373 N.C. at 129, 834 S.E.2d at 401 ("Sufficient evidence was produced "to persuade a rational juror that defendant denied officers and social workers access to [her daughter] throughout their investigation into [her daughter's] allegations against [her daughter's abuser]."); *see also State v. Bradsher*, 382 N.C. 656, 669, 879 S.E.2d 567, 575-76 (2022) ("[A] reasonable jury could conclude that defendant's false statements [to an SBI Agent] . . . obstructed, impeded, and hindered the investigation and public and legal justice."); *see also Cousin*, 233 N.C. App. at 531, 757 S.E.2d at 339 ("[V]iewed in the light most favorable to the State, a jury question existed as to whether Defendant (1) unlawfully and willfully (2) obstructed justice by providing false statements to law enforcement officers investigating the death of [the decedent] (3) with deceit and intent to defraud."); *see also State v. Wright*, 206 N.C. App. 239, 243, 696 S.E.2d 832, 835–36 (2010) ("[D]efendant's sworn false reports deliberately hindered the ability of the [State Board of Elections] and the public to investigate and

uncover information to which they were entitled by law . . . [and] the lack of any pending proceeding in this case is immaterial.").

The State proffers that sufficient evidence was presented to sustain the conviction because "[a]ny activity that precludes an officer from performing his or her work necessarily obstructs, impedes, and hinders that core function of the criminal justice process." The key question is therefore whether Defendant's secondary employment while on duty as a police officer constitutes willful obstruction of justice—an inquiry that is "very fact-specific and context-driven." *Putney*, No. 3:18-cv-00586-RJC-DSC, 2022 U.S. Dist. LEXIS 144138, at *44.

The record contains sufficient "relevant evidence that a reasonable person might accept as adequate" to support the conclusion that Defendant intentionally represented he was working for SPD while he was driving a truck for another employer. *Garcia*, 358 N.C. at 412, 597 S.E.2d at 746. Testimony from the State's witnesses provided substantial evidence of Defendant's secondary employment while on duty. This evidence permits a conclusion that Defendant intentionally misrepresented he was working for SPD while working secondary employment and thereby dishonestly and undeservedly accepted compensation sourced from taxpayers. However, given the available jurisprudential examples, concluding Defendant intentionally obstructed justice would expand the current boundaries of that particular crime. This is so even upon considering the applicability of *State v. Wright*, whereby no investigation or proceeding was pending at the time of the

defendant's act. 206 N.C. App. at 243, 696 S.E.2d at 835–36. Here—unlike *Wright*, and the body of our obstruction of justice case law—in a light most favorable to the State, there is insufficient evidence to show Defendant's wrongful actions constituted the essential elements of willful obstruction of justice. *See Garcia*, 358 N.C. at 412, 597 S.E.2d at 746; *see also Osborne*, 372 N.C. at 626, 831 S.E.2d at 333. We therefore vacate Defendant's conviction for misdemeanor obstruction of justice. *See State v. Hatcher*, 231 N.C. App. 114, 123, 750 S.E.2d 598, 604 (2013).

## B. Willful Failure to Discharge Duties

Defendant argues the indictment for willful failure to discharge duties is fatally defective since it failed to identify the specific duty he did not perform. He also contends the trial court plainly erred by failing to instruct the jury on a specific duty and the element of injury to the public and the trial court further erred in denying his motion to dismiss this charge for insufficient evidence.

### 1. Indictment

Defendant maintains the indictment for willful failure to discharge a duty is fatally defective since it does not describe the specific duty that Defendant failed to perform.

Defendant was charged and convicted under N.C. Gen. Stat. § 14-230, which provides: "If any . . . official of any of the State institutions [ ] shall willfully omit, neglect, or refuse to discharge any of the duties of his office, for default whereof it is not elsewhere provided that he shall be indicted, he shall be guilty of a misdemeanor."

The essential elements of willful failure to discharge a duty are: (1) "the defendant is an official of a state institution . . . and that" (2) "he willfully omitted, neglected or refused to discharge the duties of his office." *Eastman*, 113 N.C. App. at 350, 438 S.E.2d at 462.

Here, count II of the indictment charged that Defendant:

> [U]nlawfully and willfully did as a LIEUTENANT OF POLICE, omit and neglect to discharge a duty of his office, BY WORKING SECONDARY EMPLOYMENT WHILE ON DUTY AT THE CITY OF SOUTHPORT POLICE DEPARTMENT, and did thereby cause injury to the public.

It also cites the relevant statute—N.C. Gen. Stat. § 14-230—and lists a date range of offense of "02/01/2018 – 07/25/2018."

Again, Defendant's challenge to the indictment is non-jurisdictional since it concerns an element of the crime. His challenge is not one the rare defects "only arising where an indictment wholly fails to allege a crime against the laws or people of this State." *Singleton*, 386 N.C. at 184, 900 S.E.2d at 805. "[T]he language of the indictment [is] such that a person of common understanding might know what was intended." *Stewart*, 386 N.C. at 242, 900 S.E.2d at 656. Additionally, the indictment recites the charge against Defendant in a "plain, intelligible, and explicit manner," citing the statute under which he was charged. *Id.*; *see also State v. Simpson*, 295 N.C. App. 425, 430, 906 S.E.2d 72, 77 (2024). Defendant was given appropriate notice of the charge he faced and permitted to prepare for trial; thereby protecting him from double jeopardy concerns. *Stewart*, 386 N.C. at 242, 900 S.E.2d at 656. Additionally,

neither at trial nor in his brief did Defendant ever claim that the indictment "failed to put him on notice of the charged offense." *Id.* Accordingly, the challenged count of the indictment "is facially valid, having sufficiently alleged each essential element of" willful failure to discharge duties. *Simpson*, 295 N.C. App. at 431, 906 S.E.2d at 78. "Because no error occurred, we need not consider the issue of prejudice." *Singleton*, 386 N.C. at 214, 900 S.E.2d at 823. Defendant's indictment argument is therefore overruled.

### 2. *Motion to Dismiss*

Defendant argues "the State simply failed to prove that there was a single moment in time in which [he] was actually on duty as an officer but driving the truck instead."

Contrary to Defendant's urging, substantial evidence demonstrates he was driving a truck for Oak Island Transport at the time he was on duty as a police officer. Indeed, Detective Gray testified to a conflict in the SPD logs:

> Q. [Y]ou looked up his RMS entry and there was a conflict?
>
> A. Yes, sir. On the RMS entry itself, if I'm not mistaken, he received a citation on this particular same date. Once again, I'm pulling solely off of memory. I did not bring any notes with me. But if I'm not mistaken, he received a citation that same day from a trooper in Columbus County while he was in operation of a commercial motor vehicle, and it was in conflict with the timeframe that he has listed on here that he started his tour of duty, which is our start time of when we would start shift, and ending time, which is when we would end our tour of duty. There was a conflict, as far as on here it shows that he started shift at 8 o'clock

that morning and he ended shift at 5:00 p.m. that evening, and it shows that he was doing -- the type of action is what I was talking about that we list down. In this case it shows the type of action that day was community policing and that he had placed approximately 70 miles on his car, 60 to 70 miles on his car that day.

Contrary to Defendant's argument, there was substantial evidence of each essential element of failure to discharge duties to support the trial court's denial of Defendant's motion to dismiss. The extensive evidence presented, as detailed above and viewed in the light most favorable to the State, was adequate to support a conclusion that Defendant was guilty of the offense. *Garcia*, 358 N.C. at 412, 597 S.E.2d at 746. Defendant's argument on this ground lacks merit.

### 3. *Jury Instructions*

Defendant also asserts the trial court committed plain error when it delivered jury instructions on willful failure to discharge a duty. Defendant maintains the trial court failed to properly identify the duties Defendant did not perform and failed to instruct the jury on the element of injury to the public.

Since Defendant did not object at trial, we review this argument for plain error. *State v. French*, 273 N.C. App. 601, 608–09, 849 S.E.2d 360, 365 (2020); *State v. Collington*, 375 N.C. 401, 409, 847 S.E.2d 691, 697 (2020) ("[U]npreserved issues related to jury instructions are reviewed under a plain error standard, while preserved issues are reviewed under a harmless error standard."). To establish plain error, a defendant "must show 'that a fundamental error occurred at trial. To show

fundamental error, a defendant 'must establish prejudice—that, after examination of the entire record, the error 'had a probable impact on the jury's finding that the defendant was guilty.'" *State v. Maddux*, 371 N.C. 558, 564, 819 S.E.2d 367, 371 (2018) (citations omitted). Since "plain error is to be applied cautiously and only in the exceptional case, the error will often be one that seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Id.* (citations and quotation marks omitted).

"It is well established that the defendant in a criminal action has a right to a full statement of the law from the court." *Rhome*, 120 N.C. App. 278, 294, 462 S.E.2d 656, 667 (1995). The "[f]ailure to specifically charge the jury on every element of each crime with which the defendant is charged is not error per se, requiring reversal, but reversal is mandated in such a case if the jury consequently falls into error." *Id.* When "instructing the jury, the trial court must *correctly* declare and explain the law as it relates to the evidence." *Id.* (citation and quotation marks omitted). In addition, "the jury charge must relate each and every essential element as alleged in the indictment." *Id.* at 294, 462 S.E.2d at 667–68. As our analysis of the indictment shows, the essential elements of willful failure to discharge a duty consist of the following: "1) the defendant is an official of a state institution . . . and that 2) he willfully omitted, neglected or refused to discharge the duties of his office." *Eastman*, 113 N.C. App. at 350, 438 S.E.2d at 462; *see also* N.C. Gen. Stat. § 14-230.

Here, the trial court instructed the jury as follows:

The last instruction will be on willful failure to discharge duties, which was a misdemeanor.

For you to find the defendant guilty of this offense, the State must prove two things beyond a reasonable doubt.

First, the defendant was an official for the City of Southport.

And, second, that the defendant willfully omitted or neglected or refused to discharge the duties of his office as a lieutenant of the Southport Police Department.

If you find from the evidence beyond a reasonable doubt that on or about the alleged date the defendant willfully omitted, neglected, or refused to discharge the duties of his office as a lieutenant of the Southport Police Department, it would be your duty to return a verdict of guilty. If you do not so find or have a reasonable doubt as to one or more of these things, it would be your duty to return a verdict of not guilty.

### *a. Specific Duty*

Defendant contends the lack of specificity in the jury instructions amounted to plain error because the State "failed to produce a single witness that testified of a specific task or duty that [he] was required to do (particularly at a given time) and failed to do." Defendant relies on the holding in *State v. Rhome* for support. 120 N.C. App. 278, 462 S.E.2d 656.

In *Rhome*, the defendant served as a magistrate and was convicted of obtaining property by false pretense, refusing to discharge the duties of a magistrate, and embezzlement. *Id.* at 280, 462 S.E.2d at 659. On appeal, the defendant argued "that the jury was improperly instructed regarding his alleged failure to discharge the

duties of a magistrate." *Id.* at 292, 462 S.E.2d at 666. The indictment in *Rhome* expressly stated that the magistrate failed to discharge a specific duty of office "by failing to issue a warrant." *Id.* at 296, 462 S.E.2d at 669. Yet, when charging the jury, the trial court "never instructed either upon the duties of a magistrate, or more importantly, upon the specific duty alleged in the indictments to have been violated." *Id.* at 297, 462 S.E.2d at 669. Our Court determined that although "the State . . . was not required to allege any specific act, having done so, it was confined to the particular act specified." *Id.* at 297, 462 S.E.2d at 669 (internal citation omitted). Further, "the trial court was required to issue instructions tailored to the charge and the indictment." *Id.* (internal quotation marks and citation omitted). The *Rhome* Court concluded the trial court's failure to include in its charge the duty of a magistrate set out in the indictments constituted plain error. *Id.* at 297–98, 462 S.E.2d at 669.

Unlike *Rhome*, here, the indictment did not expressly include a specific duty. And the jury heard ample evidence of the duties required of SPD officers at trial. In any event, our Court has previously determined that even if a trial court fails to instruct on a certain element of a crime, it does not amount to plain error if there is substantial evidence supporting the element within the record. *See State v. Wallace*, 104 N.C. App. 498, 506, 410 S.E.2d 226, 231 (1991) (determining that a trial court's failure to instruct the jury on an essential element of a crime does not rise to plain error if there is substantial evidence supporting the element within the record).

Here, substantial evidence of the duties of a police officer was presented

- 20 -

through the testimony of several police officers. Officer Eric Maynes testified that the duties of the day shift included taking 911 calls, keeping a high presence in the city and around the schools, and performing traffic stops. Officer Maynes added, although night shift duties focused less on community presence, they still involved taking 911 calls and performing traffic stops, with a focus on DWI enforcement. Detective Ransom testified day shift officers would go on patrol after clocking in, "which is pretty much just being seen in the community." Day shift officers would also conduct house checks for people who were out of town and "key checks" to monitor certain areas of the city several times a day. Evidence also shows Defendant should have been engaged in community policing in Southport on 7 March 2018 from 8:00 a.m. to 5:00 p.m. But at 2:33 p.m. that same day, Defendant received a speeding citation in Columbus County while driving a commercial truck back from Charlotte. The jury did not have to speculate about the duties Defendant failed to perform when he was driving a truck during his scheduled SPD shift. Accordingly, Defendant is unable to establish plain error. *Wallace*, 104 N.C. App. at 506, 410 S.E.2d at 231.

### b. Injury to the Public

Defendant contends the trial court plainly erred by not instructing the jury on the "element of injury to the public." Defendant asserts "injury to the public is a judicially recognized element of the crime" under *State v. Birdsong*, 325 N.C. 418, 422, 384 S.E.2d 5, 7 (1989). By failing to instruct the jury on injury to the public, Defendant maintains the trial court relieved the jury of any duty to find public

injury—a necessary element of the offense. Although the trial court failed to instruct the jury on this element, Defendant was not prejudiced as a result of this error and cannot establish plain error. *See Maddux*, 371 N.C. at 564, 819 S.E.2d at 371 ("To establish plain error, a defendant "must show 'that a fundamental error occurred at trial. To show fundamental error, a defendant 'must establish prejudice—that, after examination of the entire record, the error 'had a probable impact on the jury's finding that the defendant was guilty.'").

Our relevant precedents demonstrate that injury to the public is an essential element of willfully failing to discharge duties. *See Birdsong*, 325 N.C. at 422, 384 S.E.2d at 7 ("The offense has two statutory components: (1) that the defendant be an official of a State institution and (2) that he willfully fail to discharge the duties of his office. Injury to the public is a judicially recognized element of the crime."); *see also State v. Anderson*, 196 N.C. 771, 773, 147 S.E. 305, 306 (1929) ("It is to be observed that the essentials of the crime as prescribed are: first, a wilful neglect in the discharge of official duty; and second, injury to the public."); *see also Rhome*, 120 N.C. App. at 293–94, 462 S.E.2d at 667 ("The essential elements of the offense . . . include: (1) the willful omission, neglect or refusal to discharge the duties of the office . . . by (2) . . . an official of a state institution rather than a state employee. Further, injury to the public must occur as a consequence of the omission, neglect or refusal."). The "[f]ailure to specifically charge the jury on every element of each crime with which the defendant is charged is not error per se, requiring reversal, but reversal is

mandated in such a case *if the jury consequently falls into error*." *Rhome*, 120 N.C. App. at 294, 462 S.E.2d at 667 (emphasis added).

After careful review, we hold the trial court committed error by failing to provide "a full statement of the law" when instructing the jury. *Id.* In the instant case, the trial court instructed the jury as follows: To find Defendant guilty of willful failure to discharge a duty, "the State must prove two things beyond a reasonable doubt. First, [Defendant] was an official for the City of Southport. And second, that [Defendant] willfully omitted or neglected or refused to discharge the duties of his office as a lieutenant of the Southport Police Department." Although this instruction is consistent with the wording of N.C. Gen. Stat. § 14-230, it omits the judicially imposed element of "injury to the public." *Anderson*, 196 N.C. at 773, 147 S.E. at 306.

Even if omission of the judicially imposed element in the jury instruction constitutes error, Defendant cannot establish prejudice as result thereof in light of the overwhelming record evidence demonstrating injury to the public. *State v. Smith*, 287 N.C. App. 191, 195, 882 S.E.2d 133, 136 (2022) (citations and quotation marks omitted) ("To show that an error was fundamental, a defendant must establish prejudice—that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty."). Defendant cannot demonstrate that this error had a probable impact on the jury's verdict since a properly instructed jury would likely reach the same result. *Id.*; *see also Wallace*, 104 N.C. App. at 506, 410 S.E.2d at 231.

The evidence offered by the State tended to show that Defendant generally worked day shifts, requiring officers to be present in the community. Several officers testified that Defendant disappeared and was unavailable during his shifts. When Defendant worked day shifts, Officer Elliot observed Defendant's vehicle parked at the truck yard. Officer Elliot also noted Defendant "was supposed to be training [him], and . . . was unavailable." He elaborated, two officers were typically on patrol together and other officers at the station during day shifts, but on night shifts there were no other officers available if Defendant left. Other officers testified to dropping off Defendant at the truck yard multiple times a week. When Defendant worked night shifts, Officer Todd often observed Defendant parked in one location for "long periods of time," where it appeared that he was asleep. Sergeant Long testified that he often had to take over administrative duties when both Defendant and Chief Smith were absent. If someone called out of their shift during this time and Sergeant Long was unable to find coverage, the shift would run understaffed. In addition, Officer Ransom disclosed the SPD was "shut down" while an audit and full investigation was conducted.

On the multiple instances Defendant worked secondary employment while on duty for SPD, he could not perform the duties of a police officer. The City of South Port was deprived of Defendant's administrative and patrol services for which he was paid. The evidence presented to the jury showed Defendant's actions and inactions resulted in injury to the public. We hold that any error by the trial court did not have

an impact on the jury's verdict. *See Maddux*, 371 N.C. at 564, 819 S.E.2d at 371. Had the trial court properly instructed the jury on injury to the public, the jury would not have likely reached a different result. *Smith*, 287 N.C. App. at 195, 882 S.E.2d at 136. Defendant's plain error contention is thus overruled.

### C. Cumulative Error

Defendant last argues that the cumulative effect of the asserted errors denied him a fair trial. "Cumulative errors lead to reversal when 'taken as a whole' they 'deprived [the] defendant of his due process right to a fair trial free from prejudicial error.'" *State v. Wilkerson*, 363 N.C. 382, 426, 683 S.E.2d 174, 201 (2009) (citation omitted). "Indeed, cumulative error requires there be multiple significant errors before an appellate court can conclude that a defendant has met the high bar of demonstrating that he has been wholly 'deprived . . . of his due process right to a fair trial free from prejudicial error.'" *See State v. Gillard*, 386 N.C. 797, 852, 909 S.E.2d 226, 270 (2024) (citation omitted). Here, there are not "multiple significant errors," and Defendant has not "been wholly 'deprived . . . of his due process right to a fair trial free from prejudicial error.'" *Id.* (citation omitted). Defendant's argument on this ground fails.

### IV. Conclusion

The State did not present substantial evidence of each essential element of obstruction of justice; accordingly, we vacate the conviction for that particular offense. Nonetheless, we hold the indictment for failure to discharge a duty was

sufficient, and the trial court did not commit error by denying Defendant's motion to dismiss. We also conclude the trial court's error in instructing the jury on this charge did not amount to plain error, and Defendant received a fair trial and discern no cumulative error.

NO ERROR IN PART; VACATED IN PART.

Judges ZACHARY and COLLINS concur.

Report per Rule 30(e).