STATE OF NORTH CAROLINA v. STONIE MAYNOR EASTMAN, DEFENDANT

No. 9210SC1210

(Filed 18 January 1994)

1. **Public Officers and Employees § 39 (NCI4th)— Director of Cottage Life at Governor Morehead School—State employee— no officer of State—no conviction of failure to discharge duties**

     The Director of Cottage Life at the Governor Morehead School for the Blind was merely a State employee and not an official of the State and thus could not be convicted of the crime of failure to discharge duties under N.C.G.S. § 14-230 based on his failure to report alleged sexual abuse of a student where there was no evidence that he could exercise sovereign power at any time in the course of his employment, and there was no evidence that his position was created by statute, constitution, or delegation of state authority.

     **Am Jur 2d, Public Officers and Employees §§ 416 et seq.**

2. **Obstructing Justice § 15 (NCI4th) — investigation at Governor Morehead School — failure to show intentional concealment or destruction of evidence**

In a prosecution of defendant for obstruction of justice, there was insufficient evidence òf specific intent of the crime charged for the jury to conclude that defendant, Director of Cottage Life at the Governor Morehead School for the Blind, in fact intended to conceal or destroy evidence of an investigation of alleged sexual misconduct at the school; furthermore, the evidence presented by the State tended to show that defendant's failure to report to the Department of Social Services was merely compliance with the published policy of the school rather than an intentional election on defendant's part.

**Am Jur 2d, Obstructing Justice §§ 108-110.**

Appeal by defendant from judgment entered 5 June 1992 by Judge Donald W. Stephens in Wake County Superior Court. Heard in the Court of Appeals 15 September 1993.

This case arises out of an incident involving Hannah Goodman, a thirteen-year-old student at the Governor Morehead School for the Blind. Hannah reported to one of her houseparents, Glenda McKeithan, that she was receiving coded love letters from a volunteer at the school, Jerry Hewlett. She gave Ms. McKeithan four pages of her diary and two letters to review. Ms. McKeithan determined that there had been some sort of sexual encounter between Hewlett and Hannah on trips between the student's home in Hickory and the school, and she reported the incident to the defendant, who at the time was the Director of Cottage Life at the Morehead School. Both Hannah and Ms. McKeithan met with the defendant and possession of the documents was turned over to him. He assured Ms. McKeithan that he would take care of the situation. Shortly thereafter, the defendant confronted Hewlett with the documents and banned him from the campus.

The defendant's supervisor, Cheryl Goodwin, was not notified of the incident until sometime in July 1991. She in turn reported it to Vernon Malone, the Superintendent of the Morehead School. At trial, Mr. Malone testified that it was the policy of the school for employees to report incidents of possible abuse or neglect to their immediate supervisor. He further testified that the decision to contact outside agencies required his approval.

Prior to the defendant's report to his supervisor, a State Bureau of Investigation inquiry was initiated looking into allegations involving another student at the school. During that investigation, agent Melanie Thomas was told of the incident involving Hannah Goodman. Agent Thomas subsequently interviewed the defendant on two occasions. The defendant told Agent Thomas that he believed an incident took place, and that the incident resulted in the confrontation with Mr. Hewlett. Agent Thomas requested that the defendant turn over the diary pages and the letters. He could not provide the diaries or letters to the agent and stated that they must have been lost in some way. The defendant also told Agent Thomas that he did not feel a crime had been committed, even though he also told her that he had told Hewlett that Goodman's parents might bring charges. The defendant further told Agent Thomas that he felt his responses to the incident were a "judgmental call."

On 15 October 1991, the defendant was charged with felonious obstruction of justice and of misdemeanor failure to discharge duties. Indictments were returned by the grand jury on 7 January 1992. Trial commenced on 1 June 1992. At the close of all the evidence, the jury returned verdicts of guilty on the charge of misdemeanor obstruction of justice and guilty of failure to discharge duties. From this verdict, the defendant appeals.

*Attorney General Michael F. Easley, by Special Deputy Attorney General Grayson G. Kelley, for the State.*

*John T. Hall and L. Michael Dodd for defendant-appellant.*

ORR, Judge.

The defendant in the instant case argues three issues on appeal. In his second and third assignments of error, he asserts that the trial court erred in denying the defendant's motions for appropriate relief to set aside the jury's verdict on the convictions of failure to discharge duties and obstruction of justice. We agree with these contentions and accordingly reverse the decision of the trial court and vacate the judgment against the defendant.

I.

Defendant argues that the trial court erred in denying his motion for appropriate relief, pursuant to N.C. Gen. Stat. § 15A-1411(a). A motion for appropriate relief allows "[r]elief from

errors committed in the trial division, or other post-trial relief."
G.S. § 15A-1411(a) (1988). Such a motion must be made in writing
unless it is made in open court, before the judge who presided
at trial, before the end of the session if made in superior court
and within ten days after entry of judgment. N.C. Gen. Stat.
§ 15A-1420(a)(1) (1988).

[1]   The defendant's basic argument is that the State did not and
could not show that he was an official of one of the State institutions
within the meaning of the statute, since he was only an employee
of the State. The argument continues that if he is not within the
group of officials included in G.S. § 14-230, he cannot be convicted
of that offense. We agree and therefore reverse the decision of
the trial court.

N.C. Gen. Stat. § 14-230 states in pertinent part that:

> If any clerk of any court of record, sheriff, magistrate, county
> commissioner, county surveyor, coroner, treasurer, or *official
> of any of the State institutions*, or of any county, city or town,
> shall willfully omit, neglect or refuse to discharge any of the
> duties of his office, for default whereof it is not elsewhere
> provided that he shall be indicted, he shall be guilty of a
> misdemeanor. If it shall be proved that such officer . . . willfully
> and corruptly omitted, neglected or refused to discharge any
> of the duties of his office, or willfully and corruptly violated
> his oath of office . . . such officer shall be guilty of misbehavior
> in office, and shall be punished by removal therefrom under
> the sentence of the court as a part of the punishment for
> the offense, and shall also be fined or imprisoned in the discre-
> tion of the court.

(Emphasis added.) The essential elements of the crime are that
1) the defendant is an official of a state institution, rather than
a state employee, and that 2) he willfully omitted, neglected or
refused to discharge the duties of his office.

As a threshold question, we must define whether the position
held by the defendant is an office within the meaning of the statute.
The North Carolina Supreme Court distinguished state officers
from employees in *State v. Hord*, 264 N.C. 149, 141 S.E.2d 241
(1965). In deciding that a police officer was an official within the
meaning of the statute, the Court stated: "To constitute an office,
as distinguished from employment, it is essential that the position

must have been created by the constitution or statutes of the sovereignty, or that the sovereign power shall have delegated to an inferior body the right to create the position in question." *Id.* at 155, 141 S.E.2d at 245. "An essential difference between a public office and mere employment is the fact that the duties of the incumbent of an office shall involve the exercise of some portion of the sovereign power." *Id.* Thus, in the case at bar, the prosecution was required to offer proof that the defendant's employment was created by the constitution, statutory authority, or some delegation of sovereign power, and that the defendant exercised some portion of that sovereign power in the course of his duties.

The testimony at trial indicated that the defendant was the Director of Cottage Life, and was one of the three senior administrators at the school, supervising a number of paid staff and volunteers. Vernon Malone, Superintendent of the Morehead School at the time of the incidents, stated that the defendant was a state employee whose role in "caring for the students in the afternoons and in the evenings and getting them out in the morning was—a vital piece. There's no question about that. Very vital." He further testified that "[i]f it's something that happened in Cottage Life, then Mr. Eastman would have the responsibility."

However, Mr. Malone also testified that the defendant had no policy making position, although he had been an employee of the State for twenty-five years. His testimony indicated that the defendant was required to go through channels within the school in order to report alleged instances of abuse. Additionally, the school's 1988 policy statement required that "[t]he supervisor *shall* investigate any incident of alleged or suspected abuse and file a preliminary report with the superintendent within twenty-four (24) hours." (Emphasis in original.) Mr. Malone testified that, "I don't think that he [the defendant] would make the decision as to whether or not it [any alleged abuse] ought to be reported, no. Actually, the reporting or the soliciting of outside investigation would not take place or should not have taken place if the superintendent was not aware of that."

The State failed to show any instance where the defendant could exercise sovereign power at any time in the course of his employment. The State additionally failed to produce any evidence that the defendant's position was created by statute, constitution, or delegation of state authority. The evidence presented showed

that the defendant made decisions and "judgment calls" normally made by a senior staff member and that they. were subject to review and approval by other personnel and by the superintendent of the school.

"On a defendant's motion for dismissal, the trial court must determine only whether there is substantial evidence of each essential element of the offense charged and of the defendant being the perpetrator of the offense. . . . What constitutes substantial evidence is a question of law for the court." *State v. Olson*, 330 N.C. 557, 564, 411 S.E.2d 592, 595 (1992) (citations omitted). "Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.* "To be 'substantial,' evidence must be existing and real, not just 'seeming or imaginary.' " *Id.* at 564, 411 S.E.2d at 595, quoting *State v. Earnhardt*, 307 N.C. 62, 66, 296 S.E.2d 649, 652 (1982).

We agree with the defendant that his motion for appropriate relief, pursuant to N.C. Gen. Stat. § 15A-1411, was improperly denied by the trial court. Our review of the record indicates that there was no substantial evidence presented to prove that the defendant was an officer of the state, and thus no evidence of one of the essential elements of the crime charged. The defendant, as a matter of law, could not be convicted of the crime of failure to discharge duties under G.S. § 14-230. Accordingly, we reverse the decision of the trial court and vacate the judgment on the conviction for failure to discharge duties.

II.

[2] The defendant also argues that the trial court erred in denying his motion for appropriate relief with respect to the charge of obstruction of justice. We find that, as a matter of law, there was insufficient evidence of specific intent of the crime charged for the jury to conclude that the defendant in fact intended to conceal or destroy evidence of the investigation at the Morehead School. We therefore vacate the judgment as to the charge of obstruction of justice.

Defendant was charged with common law obstruction of justice. The indictment read:

[T]he defendant . . . did unlawfully, willfully and feloniously did with deceit and intent to defraud, and for a corrupt purpose commit the infamous offense of obstruction of justice by failing

**STATE v. EASTMAN**

[113 N.C. App. 347 (1994)]

to report to the Director of the Department of Social Services of Wake County or any law enforcement agency that he had cause to believe that Hannah F. Goodman, . . . a juvenile under his supervision had been sexually abused and that the crime of taking indecent liberties with a minor had been committed against said juvenile, and furthermore after failing to report the matter he concealed and destroyed evidence, including paper writings, letters, and documents, that had been entrusted to him and were in his possession, and that he knew or should have known would have concerned this matter and would have assisted governmental authorities in the investigation of this matter.

At common law, it is an obstruction of justice to suppress, fabricate, or destroy physical evidence. *Wharton's Criminal Law* § 588 (14th ed. 1981). *Wharton* illustrates the elements of the crime by citing various states' statutory definitions. All these statutes reflect the common law principal that when a person, "believing that an official proceeding is pending or about to be instituted and acting without legal right or authority . . . alters, destroys, conceals, or removes any record, document, or thing with purpose to impair its verity or availability in such proceeding", he is guilty of obstruction of justice. *Wharton, supra,* quoting Colo. Rev. Stat. § 18-8-610(1) and Conn. Gen. Stat. Ann. § 53a-155(a).

North Carolina's codified obstruction of justice offenses are found at N.C. Gen. Stat. § 14-221 through § 14-227. All of these offenses are specific intent crimes, requiring that the State present evidence that the defendant acted willfully or with purpose in committing the offense. Likewise, the common law offense charged in the case *sub judice* required that the State prove that the defendant willfully and with an intent to defraud destroyed the notes relating to Hannah Goodman, and that he willfully failed to report the incident to the Department of Social Services.

Our review of the record indicates that there was insufficient evidence presented for the jury to conclude that the documents had been intentionally destroyed by the defendant, or that they had been destroyed in order to obstruct a criminal investigation of the Morehead School. Further, the evidence presented by the State tended to show that the defendant's failure to report to the Department of Social Services was merely compliance with the published policy of the school rather than an intentional election

on the defendant's part. There was no evidence whatsoever that the defendant knew that an investigation was pending until he was interviewed by Officer Thomas.

In applying the rules regarding review of a motion for appropriate relief pursuant to N.C. Gen. Stat. § 15A-1411 as outlined in part I of this opinion, we find that even in reviewing the evidence in the light most favorable to the State, there was no substantial evidence presented which would enable the jury to conclude that the defendant *intended* to commit the crime of common law obstruction of justice. We therefore reverse the decision of the trial court and vacate the judgment as to the charge. of obstruction of justice as well.

In light of the above disposition of the defendant's convictions, it is unnecessary to review defendant's first assignment of error regarding the trial court's denial of defendant's motion *in limine*.

The decision of the trial court is reversed and judgment against defendant vacated.

Judges EAGLES and GREENE concur.