An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-773

Filed 17 June 2026

Brunswick County, Nos. 23CR000425-090, 23CR000426-090, 23CR000427-090

STATE OF NORTH CAROLINA

v.

JODIE LYNN MCCALL

Appeal by defendant by petition for writ of certiorari from judgment entered 1 November 2024 by Judge Tiffany Peguise-Powers in Brunswick County Superior Court. Heard in the Court of Appeals 10 March 2026.

*Attorney General Jeff Jackson, by Assistant Attorney General Hillary F. Patterson, for the State.*

*Appellate Defender Glenn Gerding, by Assistant Appellate Defender Amanda S. Zimmer, for defendant-appellant.*

ZACHARY, Judge.

Defendant Jodie Lynn McCall appeals from the trial court's judgment entered following a bench trial, during which the court found Defendant guilty of felony larceny, felony obstruction of justice, and misdemeanor willful failure to discharge duties. On appeal, Defendant argues that the court erred by denying her motion to dismiss the charges of obstruction of justice and willful failure to discharge duties.

After careful review, we affirm.

## I. Background

On 15 May 2023, a Brunswick County grand jury returned indictments charging Defendant with felony larceny, felony obstruction of justice, and misdemeanor willful failure to discharge duties. After Defendant waived her right to a jury trial, the case came on for a bench trial in Brunswick County Superior Court on 30 October 2024. The evidence at trial tended to show the following:

At around 6:00 p.m. on Thursday, 27 October 2022, Defendant, a Brunswick County Sheriff's deputy, was on patrol when she responded to a call regarding a "careless and reckless driver" who "had run off the roadway." Defendant was the first law enforcement officer to arrive on the scene. She observed a "large white vehicle in [a] ditch," identified the driver as Chandler Wright, and activated her body-worn camera. Based on her interactions with Mr. Wright, Defendant suspected that he was impaired; accordingly, she detained him and placed him in the back of her patrol car while she secured the scene and awaited backup.

Sheriff's Deputy Ryan Harris soon arrived, and State Highway Patrol Troopers Ryan McDermott and Jackson Cook reached the scene shortly thereafter. One of the troopers called a tow truck to transport Mr. Wright's vehicle.

There were "a good number of firearms" in Mr. Wright's truck. During her initial interactions with Mr. Wright, Defendant observed in his truck, in plain view, an unsecured firearm and an open alcoholic beverage. She then saw two more guns

"in the immediate front area" of the vehicle and "at least one case for a long gun" in the backseat. At Defendant's recommendation and in accordance with Brunswick County Sheriff's Office policy, the officers conducted an inventory search of "all the firearms" in Mr. Wright's vehicle before it was towed.

While inventorying the contents of Mr. Wright's vehicle, Defendant realized that the battery on her body-worn camera had died. Despite this knowledge, Defendant continued to search Mr. Wright's vehicle, only changing the battery once the search was completed.

During the inventory search (but while her camera was not recording), Defendant discovered a small black duffel bag containing a small handgun, which she gave to Trooper McDermott so that the serial number could be recorded. Defendant also found cash in the duffel bag but failed to report it to Trooper McDermott or the other officers present.

Defendant put the money in the right cargo pocket of her pants in order "[t]o later count it on body camera for Mr. Wright." She stated that she did not count the money when the new battery was installed in her body-worn camera "[b]ecause at th[at] point Mr. Wright was uncooperative." Defendant testified that she "forgot about [the money] the rest of the time [she was] on scene" and neglected to report her collection of the money to Trooper McDermott or Trooper Cook.

Upon returning home that evening, Defendant discovered the money in her pocket and determined that there was $819.00 in cash. At some point, Defendant

secured the cash in an evidence bag at her home. In addition to the money, Defendant also found in Mr. Wright's vehicle (and subsequently transported to her home) a flashlight that she believed belonged to Trooper McDermott; she placed the flashlight in her patrol vehicle to return to him later.[1]

Due to an earlier incident involving the administration of a traffic unit test, Defendant had been placed on a three-year period of probation and warned that any further infraction during her probationary period would result in her "automatic termination." Defendant testified that she did not intend to keep the money and was "trying to figure out the best way" to return it; nevertheless, because of her probationary status, she "was worried about disciplinary action" and believed that the sheriff was the only person to whom she could speak about the matter.

After Mr. Wright retrieved his vehicle from the tow yard late Thursday evening, he discovered that the money in his duffel bag and his son's flashlight were missing. He reported the missing items to the Brunswick County Sheriff's Office the next morning, Friday, 28 October 2022. Lieutenant Tate Bond was notified of Mr. Wright's call and commenced an investigation that day. Lieutenant Bond requested that Defendant and Deputy Harris "dock their body[-worn] cameras" and download

---

[1] Defendant's actions violated a Brunswick County Sheriff's Office policy, which provides that officers may not "take evidence home. Once [they] collect evidence, it is turned in by the end of that tour of duty into the evidence lockers at the [S]heriff's [O]ffice." If officers discover that they have inadvertently taken evidence from the scene of an investigation, they are expected to report the incident and return the evidence immediately. Cash that is discovered during a search of a subject's vehicle prior to towing is "transferred to evidence or transferred back to that subject before he le[aves] the arrest area."

the footage so that a "Record-After-the-Fact on the dash camera[s]" could be conducted. It was later determined that approximately 30–40 minutes of footage from Defendant's camera was missing.

That same day, Defendant spoke briefly with Lieutenant Bond. He told Defendant that "he could not discuss the investigation" and that she should consult Captain Tina Edwards in Internal Affairs. Yet Defendant did not contact Captain Edwards that day. Moreover, by weekend's end, Defendant still had not reported that she had taken Mr. Wright's money and flashlight from his vehicle the night of the roadside search; that she had transported those items home with her; or that she remained in possession of Mr. Wright's missing property.

On Tuesday, 1 November 2022, Captain Edwards interviewed Defendant as part of the internal investigation. At that meeting, Defendant did not disclose to Captain Edwards that she had taken Mr. Wright's property or that she continued to possess it. The next day, Defendant was asked to participate in a follow-up interview. Although she did not attend the interview, Defendant called the sheriff and admitted that she was in possession of Mr. Wright's cash and flashlight.

Sheriff's Captain Timothy Clemmons of Criminal Investigations and four other officers traveled to Defendant's house to retrieve the property. Defendant allowed them into her home and directed them to the missing items. The officers recovered a flashlight and $819.00 cash in an evidence bag.

At the conclusion of the bench trial in this matter, the judge returned verdicts

finding Defendant guilty of all charges: felony larceny, felony obstruction of justice, and misdemeanor willful failure to discharge duties. On 1 November 2024, the trial court entered judgment, consolidating Defendant's convictions for obstruction of justice and willful failure to discharge duties and sentencing her to 6 to 17 months' imprisonment in the custody of the North Carolina Department of Adult Correction. The court suspended Defendant's sentence, placed her on supervised probation for 18 months, and ordered her to pay $1,000.00 in restitution to Mr. Wright.

Defendant filed notice of appeal on 21 November 2024.

## II.    Appellate Jurisdiction

As a preliminary matter, we address this Court's jurisdiction to review this appeal.

Our Appellate Rules provide that a defendant in a criminal action may take appeal by (1) "giving oral notice of appeal at trial"; or (2) "filing notice of appeal with the clerk of superior court and serving copies thereof upon all adverse parties within fourteen days after entry of the judgment." N.C.R. App. P. 4(a)(1), (2). Here, Defendant did not give oral notice of appeal at trial. Defendant also neglected to file and serve written notice of appeal within 14 days after entry of the judgment. Consequently, Defendant failed to appeal as prescribed by Rule 4.

Ordinarily, "[a] failure on the part of the appealing party to comply with Rule 4 deprives this Court of jurisdiction to consider his or her appeal." *State v. Hughes*, 210 N.C. App. 482, 484, 707 S.E.2d 777, 778 (2011). However, this Court, in its

discretion, may allow "a petition for writ of certiorari and review an order or judgment entered by the trial court when the right to prosecute an appeal has been lost by failure to take timely action." *State v. Holanek*, 242 N.C. App. 633, 640, 776 S.E.2d 225, 232 (extraneity removed), *disc. review denied*, 368 N.C. 429, 778 S.E.2d 95 (2015), *cert. denied*, 579 U.S. 918, 195 L. Ed. 2d 824 (2016); *see also* N.C.R. App. P. 21(a)(1).

"This use of certiorari is proper even though compliance with the requirements for entry of notice of appeal is jurisdictional." *State v. Mangum*, 270 N.C. App. 327, 334, 840 S.E.2d 862, 868 (2020) (extraneity removed). As our appellate courts have consistently emphasized, "a defect in a notice of appeal should not result in loss of the appeal as long as the intent to appeal can be fairly inferred from the notice and the appellee is not misled by the mistake." *State v. Springle*, 244 N.C. App. 760, 763, 781 S.E.2d 518, 521 (2016) (extraneity removed).

In the present case, Defendant filed a petition for writ of certiorari on 25 September 2025 acknowledging the untimeliness of her notice of appeal and requesting that this Court allow her petition and review the merits of her arguments. In its response, the State does not contend that it has suffered any prejudice because of the delay, nor do we discern any.

Therefore, in our discretion, we allow Defendant's petition for writ of certiorari and proceed to review the merits of her appeal.

**III.   Discussion**

Defendant argues that the trial court erred by denying her motion to dismiss the charges of obstruction of justice and willful failure to discharge duties. We disagree.

## A. Standard of Review

"The question for a court on a motion to dismiss for insufficient evidence is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of [the] defendant's being the perpetrator of such offense." *State v. Bradsher*, 382 N.C. 656, 658, 879 S.E.2d 567, 569 (2022) (extraneity removed). "If so, the motion is properly denied." *Id.* (citation omitted). "Substantial evidence is the amount necessary to persuade a rational juror to accept a conclusion." *State v. Ditenhafer*, 373 N.C. 116, 125, 834 S.E.2d 392, 399 (2019) (extraneity removed).

"The test for sufficiency of the evidence is the same whether the evidence is direct or circumstantial or both. Circumstantial evidence may withstand a motion to dismiss and support a conviction even when the evidence does not rule out every hypothesis of innocence." *Bradsher*, 382 N.C. at 658, 879 S.E.2d at 569 (citation omitted).

"In evaluating the sufficiency of the evidence to support a criminal conviction, the evidence must be considered in the light most favorable to the State; the State is entitled to every reasonable intendment and every reasonable inference to be drawn therefrom." *Ditenhafer*, 373 N.C. at 125–26, 834 S.E.2d at 399 (extraneity removed).

"Once the court decides that a reasonable inference of [the] defendant's guilt may be drawn from the circumstances, then it is for the [trier of fact] to decide whether the facts, taken singly or in combination, satisfy it beyond a reasonable doubt that the defendant is actually guilty." *Bradsher*, 382 N.C. at 658, 879 S.E.2d at 569–70 (extraneity removed). The trial "court is to consider all evidence actually admitted, competent or incompetent, which is favorable to the State, disregarding [the] defendant's evidence unless favorable to the State." *Id.* at 658, 879 S.E.2d at 570 (extraneity removed).

We review a trial court's denial of a criminal defendant's motion to dismiss de novo. *State v. Cousin*, 233 N.C. App. 523, 529, 757 S.E.2d 332, 338, *disc. review denied*, 367 N.C. 521, 762 S.E.2d 446 (2014). Under de novo review, this Court "considers the matter anew and freely substitutes its own judgment." *State v. Biber*, 365 N.C. 162, 168, 712 S.E.2d 874, 878 (2011) (extraneity removed).

### B. Felony Obstruction of Justice

Obstruction of justice is a common-law offense that "may take a variety of forms." *In re Kivett*, 309 N.C. 635, 670, 309 S.E.2d 442, 462 (1983). Our Supreme Court has defined the offense expansively "as any act which prevents, obstructs, impedes or hinders public or legal justice." *State v. Ford*, 388 N.C. 713, 720, 923 S.E.2d 549, 555 (2025) (extraneity removed). Moreover, relevant here, "[i]f common law obstruction of justice is done with deceit and intent to defraud it is a felony." *Ditenhafer*, 373 N.C. at 128, 834 S.E.2d at 400 (extraneity removed); *see* N.C. Gen.

Stat. § 14-3(b) (2025) ("If a misdemeanor offense as to which no specific punishment is prescribed be infamous, done in secrecy and malice, or with deceit and intent to defraud, the offender shall, except where the offense is a conspiracy to commit a misdemeanor, be guilty of a Class H felony.").

Thus, the essential "elements of common law felonious obstruction of justice are: (1) the defendant unlawfully and willfully; (2) obstructed justice; (3) with deceit and intent to defraud." *Ditenhafer*, 373 N.C. at 128, 834 S.E.2d at 400 (quoting *Cousin*, 233 N.C. App. at 537, 757 S.E.2d at 342–43).

In the instant case, the relevant indictment provides:

> The jurors for the State upon their oath present that on or about [10/27/2022 – 11/02/2022] . . . and in [Brunswick County] . . . [Defendant] . . . unlawfully, willfully and feloniously did
>
> obstruct justice, to wit: Defendant was a sworn deputy with the Brunswick County Sheriff's Office and, in the course of her patrol duties, came in contact with [Mr. Wright] on October 27, 2022, at which time she initiated a driving while impaired investigation. During that investigation, Defendant participated in a search of [Mr.] Wright's vehicle. During that search, Defendant took U.S. currency belonging to [Mr.] Wright from inside of a duffel bag. Following the taking of the U.S. currency, Defendant failed to notify members of the Brunswick County Sheriff's Office that she took and possessed the U.S. currency, keeping the U.S. currency in her possession, for six (6) days following the taking of the U.S. currency. The taking of the U.S. currency was done with deceit and intent to defraud. The withholding of the U.S. currency and failure to notify members of the Brunswick County Sheriff's Office of the taking and withholding of the U.S. currency was done with deceit and with intent to defraud.

On appeal, Defendant challenges the sufficiency of the State's evidence that she 1) obstructed justice, and 2) acted with deceit and intent to defraud. We address each element in turn.

### 1. *Substantial evidence supports that Defendant committed "an[ ] act which prevents, obstructs, impedes or hinders public or legal justice."*

As noted above, common-law obstruction of justice "takes a variety of forms": The offense incorporates "any act which prevents, obstructs, impedes or hinders public or legal justice." *Ford*, 388 N.C. at 720, 923 S.E.2d at 555.

The question, then, arises: "What constitutes 'public justice' ?" *State v. Wright*, 206 N.C. App. 239, 244, 696 S.E.2d 832, 836 (2010) (observing that our legislature included within Subchapter VIII of our Criminal Code—titled "Offenses Against Public Justice"—"among others, offenses involving perjury, bribery, obstructing justice, secret listening, and misconduct in public office"). " 'Public justice' is, thus, a broad concept." *Id.*

Notwithstanding its versatility and myriad forms, proving common-law "obstruction of justice merely requires a showing that a defendant act[ed] to stymie law enforcement's progress or otherwise stall an investigation of a matter." *Ford*, 388 N.C. at 723, 923 S.E.2d at 557. "[N]o judicial proceeding actually need[s] to be pending." *Wright*, 206 N.C. App. at 243, 696 S.E.2d at 836. And "[t]he success of a defendant's obstruction efforts is not an element of the offense." *Ford*, 388 N.C. at 723, 923 S.E.2d at 557.

On appeal, Defendant argues that the trial court should have granted her motion to dismiss this charge because the State failed to prove "that the act alleged – the taking of the money during the search of [Mr.] Wright's truck – was done for the purpose of hindering or impeding an ongoing or potential investigation." To support this argument, Defendant emphasizes 1) Lieutenant Bond's testimony that he did not "see how money could play into evidence for a DWI," and 2) Captain Clemmons's statement that he had "never collected U.S. currency during a DWI investigation." Defendant contends that this testimony establishes that "any taking of money was unrelated to" the DWI wreck "and did not hinder or impede any investigation into" Mr. Wright. Defendant further asserts that there was "no testimony" that her actions "slowed the investigation . . . or hindered the troopers' ability to arrest [Mr.] Wright" or otherwise "impacted any judicial proceeding." It is evident that Defendant misapprehends not just this element, but the offense as a whole.

Again, "*any act* which prevents, obstructs, impedes or hinders public or legal justice" constitutes common-law obstruction of justice. *Id.* at 720, 923 S.E.2d at 555 (emphasis added). To satisfy its burden of proof, the State need only "show[ ] that [the] defendant act[ed] to stymie law enforcement's progress or otherwise stall an investigation of a matter." *Id.* at 723, 923 S.E.2d at 557. Significantly, however, an active investigation is not an element of common-law obstruction of justice. *E.g.*, *Wright*, 206 N.C. App at 243, 696 S.E.2d at 836 ("[N]o judicial proceeding actually

need[s] to be pending."). The offense "extends beyond interference with criminal proceedings." *Id.* at 241, 696 S.E.2d at 835.

Moreover, far from Defendant's proffered interpretation, viewing the evidence in the light most favorable to the State, a reasonable trier of fact could infer from the officers' statements *not* what Defendant suggests—that taking $819.00 in cash from a zipped duffel bag discovered inside a DWI suspect's vehicle was somehow "unrelated to . . . and did not hinder or impede" the investigation of that matter—but instead, that Defendant's actions were indicative of public misconduct. *See id.* at 244, 696 S.E.2d at 836 (noting that "[p]ublic justice is . . . a broad concept").

During the inventory search, Defendant orally communicated the make, caliber, and serial number of each firearm in Mr. Wright's truck to Trooper McDermott and then recorded the information in her computer. Defendant also found $819.00 in cash in a small black duffel bag in the backseat of Mr. Wright's vehicle. But unlike her announcement at the discovery of numerous firearms—approximately 15 to 20, by Mr. Wright's estimation—Defendant did not disclose that she had found any money inside the truck. Instead of recording the recovered cash with the inventoried firearms or returning it to Mr. Wright, Defendant pocketed the money and took it home.

Moreover, when Defendant reported to work the next day, Friday, 28 October 2022, she did not return the money or mention the incident to anyone at the Sheriff's Office. Nor did Defendant mention or return the money on Friday when she spoke

with Lieutenant Bond, during her meeting with Captain Edwards the following Tuesday, or at any point in between. On Wednesday, Defendant failed to attend the second scheduled interview with Captain Edwards. That day, Defendant finally contacted the sheriff and notified him that she was in possession of the missing items, six days after she learned that she was under active investigation.

Accordingly, the State presented substantial evidence of the second essential element of felony obstruction of justice—i.e., that Defendant committed "any act which prevents, obstructs, impedes or hinders public or legal justice." *Ditenhafer*, 373 N.C. at 128, 834 S.E.2d at 400 (citation omitted).

### 2. The State presented substantial evidence that Defendant acted with deceit and intent to defraud.

At base, Defendant fails to appreciate a plethora of record evidence which, viewed in the light most favorable to the State, raises inferences that Defendant's obstructive actions were done with deceit and intent to defraud. For example, Defendant did not immediately return the money, inform anyone about her (purportedly innocent) possession of it, or even acknowledge its existence—despite a statutory duty and Sheriff's Office policy to that effect.

Evidence was presented that when Defendant pocketed the money she found in Mr. Wright's vehicle, she failed to notify any other officers at the scene of the accident or any of her colleagues or superiors at the Sheriff's Office for six days,

despite several opportunities and—equally significantly—knowledge that she was required to do so.

Incident to her role as a sheriff's deputy, Defendant had a statutory duty to "keep a record . . . of all articles of personal property which may be seized or confiscated by [her], or of which [she] may have become possessed in any way in the discharge of h[er] duty." N.C. Gen. Stat. § 15-11. Further, Defendant violated the Brunswick County Sheriff's Office policy G-03, which states:

> When a deputy takes property into his/her physical custody, regardless of whether the property is released at the scene to the owner, another law enforcement agency, or transported by the deputy to the Sheriff's Office, the deputy will prepare an appropriate incident, property, or supplemental report in the electronic Records Management System (or a paper report if RMS is unavailable), along with a Property and Physical Evidence Transfer Receipt.

While inventorying Mr. Wright's vehicle, Defendant called out each gun's make, caliber, and serial number to the other officers on scene and then logged the information, as required by Brunswick Sheriff's Office policy. Defendant explained that she did this for every firearm in Mr. Wright's vehicle—including a handgun that she discovered in the same black duffel bag from which Mr. Wright's cash went missing—because Sheriff's Office policy requires an inventory of "anything of significant value" when a vehicle will be towed. However, when she removed the money from the duffel bag, Defendant made no contemporaneous oral or written record of her discovery. She failed to notify both her fellow law enforcement officers

and Mr. Wright, who was present during the roadside search. Curiously, after all her efforts (and despite her stated desire to strictly comply with Brunswick Sheriff's Office policies), Defendant never filed a report of the roadside inventory search.

Viewed in the light most favorable to the State, as we must at this stage of the proceedings, there was substantial evidence from which the trier of fact—here, the trial court—could reasonably find that Defendant committed felony obstruction of justice. The evidence supports that Defendant surreptitiously took $819.00 in cash from Mr. Wright's vehicle during an otherwise routine DWI crash investigation. For the next six days, Defendant not only wrongfully retained Mr. Wright's property, but she knowingly and purposefully failed to disclose the details of this incident to her superiors, necessitating an additional internal investigation into Defendant's actions. By her own admission, Defendant's main objective during this period was to avoid adverse employment consequences—namely, termination. Regardless of her motivation in protecting her job, Defendant acted with deceit and intent to defraud.

Therefore, the trial court did not err in denying Defendant's motion to dismiss the charge of felony obstruction of justice.

### C. Willful Failure to Discharge Duties

Defendant also argues that the trial court erred by denying her motion to dismiss the charge of willful failure to discharge duties because "[t]he State did not prove [she] was an official whose conduct was covered by [N.C. Gen. Stat.] § 14-230."

"If any . . . official of any of the State institutions, or of any county, city or town,

shall willfully omit, neglect or refuse to discharge any of the duties of h[er] office . . . [s]he shall be guilty of a Class 1 misdemeanor." N.C. Gen. Stat. § 14-230. "The essential elements of the crime are that 1) the defendant is an official of a state institution, rather than a state employee, and that 2) [s]he willfully omitted, neglected or refused to discharge the duties of [her] office." *State v. Eastman*, 113 N.C. App. 347, 350, 438 S.E.2d 460, 462 (1994).

Here, Defendant limits her challenge to the first element of this crime, asserting that because "[t]he State did not offer any evidence related to how [her] position as a deputy was created," the State "failed to prove that [she] fell under § 14-230." Defendant invokes *Eastman* in support of this proposition, maintaining that "to prove a violation of § 14-230, 'the prosecution was required to offer proof that the defendant's employment was created by the constitution, statutory authority, or some delegation of sovereign power, and that the defendant exercised some portion of that sovereign power in the course of his duties.'" (quoting 113 N.C. App. at 351, 438 S.E.2d at 462). However, Defendant's reliance on *Eastman* is misplaced. In that case, the defendant was a senior administrator of a school and this Court determined that "there was no substantial evidence presented to prove that the defendant was an officer of the state." *Id.* at 351–52, 438 S.E.2d at 462–63.

In contrast, our Supreme Court has long recognized that "a policeman, when duly appointed to such position, pursuant to statutory authority, is an officer within the meaning of [N.C. Gen. Stat.] [§] 14-230." *State v. Hord*, 264 N.C. 149, 155, 141

S.E.2d 241, 245 (1965). The *Eastman* Court recognized this precedent, noting that in *Hord*, "[t]he North Carolina Supreme Court distinguished state officers from employees" and "decid[ed] that a police officer was an official within the meaning of the statute." *Eastman*, 113 N.C. App. at 350, 438 S.E.2d at 462.

In the instant case, when asked on direct examination: "In October of 2022, was this defendant a patrol deputy with the Brunswick County Sheriff's Office?", Lieutenant Bond responded: "Yes, ma'am. She was." In addition, Defendant testified that on 27 October 2022, she "was a deputy with the Brunswick County Sheriff's Office" and had been since 1 July 2019. She further testified that she was conducting "a normal patrol day" when she responded to the call concerning Mr. Wright.

Thus, there was substantial evidence presented to establish that Defendant was "an official of a state institution, rather than a state employee." *Id.* Defendant's argument is overruled.

## IV. Conclusion

For the foregoing reasons, we conclude that the trial court did not err by denying Defendant's motion to dismiss the charges of obstruction of justice or willful failure to discharge duties. Accordingly, we affirm.

AFFIRMED.

Chief Judge DILLON and Judge COLLINS concur.

Report per Rule 30(e).